*Knauer & Knauer, Philip S. Knauer,* for complainants.
*Francis I. McCanna,* for respondent.

ENTERPRISE GARNETTING COMPANY *vs.* WILFRED J. FORCIER, C. T.
AUGUSTIN A. H. FEALHABER *vs.* SAME.
DECEMBER 23, 1943.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

456

CONDON, J.  Each of these cases is here on defendant's exception to the superior court's denial of his motion for a new trial on the ground of excessive damages. See *Enterprise Garnetting Co.* v. *Forcier, C. T.* and *Fealhaber* v. *Same,* 69 R. I. 148.  They were here previously on plaintiff's exception to the granting of defendant's motion for a new trial in each case and we remitted them to the superior court with directions in the *Enterprise Garnetting Co.* case to determine the excess damages, and in the *Fealhaber* case to determine whether or not the damages therein were excessive and, if so, to determine the amount of such excess. See 67 R. I. 336.

In the *Enterprise Garnetting Co.* case, instead of complying with these directions, the superior court has undertaken to reconsider its finding that the damages were excessive and has now found that they should stand in the amount of $58,000 as awarded by the jury.  In doing so that court has misconceived its duty.  Under our directions it was not free to thus reconsider and reverse its finding.  On the contrary, it was thereby required to complete its original finding by specifically finding further *to what extent* the jury's verdict was excessive so that the plaintiff might avail itself of the benefit of general laws 1938, chapter 540, § 1, if it so desired.

·Manifestly, we cannot give the plaintiff the greater benefit of this new finding and thus thrust upon the defendant the burden of showing here that the finding was clearly wrong. Defendant is entitled to have the superior court's first finding, that the damages were excessive, stand as a good ground for the granting of his motion for a new trial. And he, as well as the plaintiff, is also entitled to have that court's judgment, in the first instance, as to the amount of the excess. In view of the facts, however, that neither party has insisted here that the case be again remitted to the superior court to have it perform its duty in this regard and that it would probably be to the advantage of both parties, under the circumstances, if we consented to determine such excess, we shall now proceed to do so.

The jury's verdict of $58,000 was predicated upon damage to stock and machinery. There seems to be no dispute that the stock was totally destroyed by the fire and that the resulting damage to the plaintiff was $5480. This leaves $52,520 as compensation for loss of the machinery. There is a clear conflict in the evidence as to whether the machinery was a total loss. Plaintiff contends that it was such a loss, except for its salvage value as junk in the amount of $2000. Defendant, however, contends that the evidence clearly shows that the machinery was of real value as garnetting machines after the fire, and especially that two of the machines were not damaged at all by the fire.

The machinery that was involved in the fire consisted of five garnetting machines. There was a sixth machine which was stored in a shed that was not touched by the fire. This machine appears to have been dismantled and was not operating when the fire occurred. It was, however, included with the other five machines in the salvage transaction by which $2000 was realized about two months after the fire. That only five machines were involved in the fire was not always kept in mind by counsel in examining the expert witnesses relative to the value of those machines. The importance of such fact in weighing the expert testimony as to

the value of each machine before the fire will appear hereinafter.

The machines were manufactured by the James Hunter Machine Company, of North Adams, Massachusetts, sold to the plaintiff and set up by the seller in plaintiff's mill in Woonsocket. They were of two types. Four were of the four-cylinder type and were purchased, one each in 1922 and 1923, and two in 1924. The others were of the three-cylinder type. One of this type was purchased in 1924 and one in 1925. The machine which was not in the fire was of this latter type. Plaintiff's witness Plumb, an employee of the James Hunter Machine Company, testified that the larger type of machine cost at North Adams $8400, and when set up at Woonsocket, about $10,000. He further testified that the smaller type cost about $1000 less. This testimony, which was uncontradicted, was admitted by the superior court not as evidence of the value of the machines immediately before the fire in August 1935, but solely to show the competency of the witness to give his opinion later on in his examination as to such value, after taking into consideration the age of the machines and their operating condition just before the fire.

The first question which the jury had to determine was whether these machines were rendered wholly valueless by the fire. We do not definitely know how they answered that question since they were not requested to and did not make a special finding thereon. If, however, we test their verdict by comparing it with the evidence most favorable to the plaintiff of the value of the machines before the fire, it is clear that they could not have found that there was any value left in the machines after the fire. Plaintiff's witness Plumb testified that the fair value of the six machines just before the fire was $40,000, being about two-thirds of their original cost when set up in Woonsocket. Yet the jury returned a verdict which, after allowing for the undisputed value of $5480 for the totally destroyed stock, awarded damages of $52,520 for the machines. Obviously, they must have

found that the machines were rendered wholly valueless by the fire, because their verdict exceeded the full value of the machines before the fire, according to the plaintiff's evidence.

We are of the opinion that the weight of the evidence shows clearly that they were mistaken in reaching the conclusion that all the machines were rendered wholly valueless. They had before them evidence that at least two of these machines were found by defendant's witness Partlow, who purchased them in October 1935, to be undamaged by the fire. This was not mere opinion evidence as to the value of these two machines but actual direct evidence of nondamage to them by the fire. That witness, who had been engaged in the garnetting business for twenty-eight years, testified that the only attention these machines required was cleaning, and that after he had personally cleaned them of dirt and charcoal he was operating them in less than a month. This testimony was not contradicted and the witness was in no manner impeached. Indeed, he appeared to be unquestionably disinterested.

There is a conflict of the evidence as to whether all the machines were damaged by the fire. Plaintiff's witness Egan testified that they were "just debris" or "junk" after the fire. Defendant's witness Partlow, on the other hand, testified definitely and positively that two of the larger type of machines were not damaged at all by the fire. After carefully considering this evidence, we are of the opinion that Partlow's testimony greatly outweighs that of Egan, at least as to these two machines. Egan apparently did not carefully examine these machines when he visited the plaintiff's premises, and this probably accounts for his failure to notice that two of the machines were not actually damaged at all, although at first glance they appeared to be.

Partlow, on the other hand, gave the machines a thorough inspection and discovered that two of them were not damaged at all. The weight of his testimony on this point is not adversely affected in any way by the fact that he offered

only $2000 for all the machinery and readily obtained it for. that sum. If plaintiff thought erroneously that all the machines were damaged by the fire and elected to treat them as junk, that fact did not finally establish the true condition of all the machines. On the clear weight of the evidence, therefore, the jury could not have reasonably found that these two machines were junk.

Taking that view of the evidence the question remains: To what extent did the damage to the other three machines reduce their value? The evidence of their value just before the fire is conflicting. Defendant's expert witness Batey testified that the value of each of the four-cylinder machines was $2500 and that of the three-cylinder machines was $2000. Plaintiff's witness Egan testified first that the value of each of these machines was $4750, and later he testified that all of the machines in the place together were worth $40,000, although he admitted that this latter figure may have included other machinery besides garnetting machines. He admitted that if his estimate were broken down it would represent for each machine something over $6000 according to the size of the machine, some being worth a little more, others a little less. Plaintiff's witness Plumb also estimated the value of the six garnetting machines at $40,000, which he testified represented about two-thirds of their original cost when new, set up at Woonsocket. But apparently this estimate was based on all the machines being of the larger type, whereas at least two were of the smaller type, and he had earlier testified that those cost $1000 less than the larger type.

While it would appear from this evidence that only Batey gave the jury a specific basis for fixing the value of each of the two types of machines, nevertheless we do not feel justified in disregarding the testimony of the plaintiff's witnesses in this respect. On the contrary, from Plumb's testimony that the smaller type of machines cost new about $1000 less than the larger type, we think it would be reasonable for the jury to infer that the same variance would

apply proportionately in used machines. Based on his standard of value before the fire, namely, two-thirds of cost, the larger type machine would be worth $6666 and the smaller type $6000. Relying upon such an inference, it appears to us that the weight of the testimony as to the value before the fire is in favor of the plaintiff.

We are of the opinion, therefore, that the jury would have been warranted in finding that such was the value, before the fire, of the three machines which were admittedly damaged by the fire. A more difficult question is what value, if any, they had after the fire. Defendant presented no expert evidence on this point. On the other hand, the plaintiff, by its witness Egan, presented evidence that these machines had no value after the fire except as junk, that is, that they were without any value as garnetting machines. This state of the evidence as to the value of the machines after the fire is not as satisfactory as it might be, but we cannot say that the jury was not warranted, under all the circumstances, in allowing the plaintiff damages for the total loss of these machines less the salvage value realized on the sale of them to Partlow.

Calculated on this basis, however, the jury's award of damages for the loss of these machines should not have been more than $18,332. Such amount represents the value before the fire of the two larger type machines at $6666 each, and that of the smaller type, as $6000, totaling $19,332, less $1000 for salvage of these machines, which is a proportionate share of the total salvage value, namely, $2000, for the six machines. Adding these damages for the loss of the machinery, $18,332, to the damages for the loss of the stock, $5480, the total damages which the jury would be reasonably warranted in awarding the plaintiff would be $23,812. While this amount may still be generous, we are unable to find a sufficient basis in the evidence and under the law of the case for reducing it further.

In the *Fealhaber* case the jury returned a verdict of $15,000, and in accordance with our directions remitting that

case to the superior court, that court has duly passed upon the damages and found that they should stand in the amount awarded by the jury. While the trial justice has not stated in his rescript the reasons that led him to that conclusion, nevertheless it appears therefrom that he has unequivocally approved the verdict. In accordance, therefore, with our well-established rule in such cases we shall not disturb his decision unless it is clearly wrong.

The fire wholly destroyed one small building and partially destroyed a larger and more valuable building which was constructed of cement blocks. Whether this building could be repaired was a question for the jury. On this question the evidence before them was conflicting. Two expert witnesses for the plaintiff testified that it could not be repaired. On the other hand, defendant's expert testified that, by using the walls which were still standing, restoring inside beams and constructing a new roof, the cement block building could be repaired at a cost of $2641.90. Plaintiff's witnesses testified that the walls had been so weakened by the fire that they could not be safely used. On this evidence, we are convinced, from a careful reading of the transcript, that the jury could reasonably have found that the cement block building could not be repaired.

The parties stipulated at the trial in the superior court that, if the building was found to be damaged beyond repair, the measure of damages would be its replacement value after the fire on August 18, 1935. The only evidence before the jury of such value of either building was presented by the plaintiff. His expert witnesses agreed that it would cost $13,900 to replace the cement block building, but to replace the smaller building one witness estimated it would cost $4600 and the other witness estimated $4800. The total replacement value estimate was, therefore, $18,500 by one witness, and $18,700 by the other witness. Considering the fact that there was some evidence of salvage in the cement blocks in the walls that were standing and that the cement floor was only partially damaged, we cannot say that the

jury's verdict of $15,000 is not a reasonable finding of replacement value under the circumstances. We are, therefore, of the opinion that the superior court's decision in denying defendant's motion for a new trial was not clearly wrong.

Ordinarily we could end our consideration of these cases with the above disposition of the points clearly raised by defendant's exceptions, but one more question which requires some attention has arisen since we remitted the cases to the superior court. After the cases were again before that court plaintiff moved to amend each count of the declaration in each case by adding thereto a claim for interest on the damages from August 18, 1935, the date of the fire. By agreement of counsel it was stipulated that an order to this effect should be entered in each case but that it should not be construed as an admission by the defendant that he was liable for such interest.

Plaintiff contends that such interest is properly chargeable against the defendant as damages even though the element of interest was not originally before the jury at the trial and even though they were not instructed to pass on the question in the consideration of their verdict. This is a truly novel contention. Whatever may be the liberality of the rule permitting amendments after verdict this contention goes beyond such liberality and amounts to a claim of right to invade the province of the jury in determining unliquidated damages in an action of tort. Moreover, the assertion of a right, in any event, to have interest, from the date of the claim or of the writ, assessed as damages in such an action at law, is itself without precedent in this state.

Generally, no interest is allowed in actions of pure tort where by the very nature of the claim the damages are necessarily wholly unliquidated. "Broadly speaking it is generally held that interest on unliquidated demands will not be allowed as damages." *Pearson* v. *Ryan,* 42 R. I. 83, 84. In that case, which was a petition to enforce a mechanic's lien and sounded in contract rather than in tort, the court said: "Undoubtedly there is a clear distinction between a

claim for damages entirely unliquidated, as for example, claims for damages arising from assault and battery, from seduction, or from slander and libel, which are wholly at large, and a liquidated claim, where there is an express contract to pay a sum certain at a fixed time. In the former cases the amount of damages is unknown until determined after the presentation of evidence by a decision, award or verdict. In the contract case both parties know what the claim is and when it is due and payable."

The instant cases are clearly in the first category above mentioned. They are actions of nuisance in which plaintiffs claimed that by reason of a fire starting in a dump allegedly maintained by the city of Woonsocket they lost all of their property. Defendant not only denied liability for the nuisance but also contended that the fire from the dump did not burn plaintiffs' property and that in any event all of such property was not destroyed. And he further denied that the property, which was damaged by the fire, was worth what plaintiffs claimed. Surely all of these issues, which were left for the jury to determine, made plaintiffs' claims entirely unliquidated. But be that as it may, we are of the opinion that in the nature of the instant cases and in the circumstances of their travel from this court to the superior court under specific directions to that court, the interpolation of a new element of damages in the way of interest was improper and that such interest cannot be allowed to increase the damages awarded by the verdict of the jury.

Defendant's exception in the *Enterprise Garnetting Company* case is sustained and that case is remitted to the superior court for a new trial on damages only, unless the plaintiff shall, on or before January 5, 1944, in writing filed with the clerk of the superior court, remit all of the verdict therein in excess of $23,812. If such remittitur is duly filed, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by such remittitur.

Defendant's exception in the *Fealhaber* case is overruled, and that case is remitted to the superior court with direc-

tions to enter judgment on the verdict as returned by the jury.

*Higgins & Silverstein, John R. Higgins,* for plaintiffs.

*Nickerson H. Taylor,* for defendant.