## ALLAPATTAH SERVICES, INC., et. al., Plaintiffs,

v.

## EXXON CORPORATION, Defendant.

### No. 91–0986–CIV.

United States District Court, S.D. Florida.

Aug. 7, 2001.

---

1. Evans was the executive director of the MRDC.

Eugene E. Stearns, Esq., Stearns Weaver Miller Weissler, Alhadeff & Stitterson, P.A., Miami, FL, Gerald M. Bowen, Esq., Oakhill, VA, Sidney Pertnoy, Esq., Pertnoy Solowsky Allen & Haber, P.A., Miami, FL, for Plaintiffs.

Robert G. Abrams, Esq., Howrey Simon Arnold & While, LLP, Washington, DC, Larry S. Stewart, Esq., Stewart Tilghman Fox & Bianchi, PA, Miami, FL, for Defendants.

## ORDER ON PROCEDURE FOR DETERMINATION AND ENTRY OF FINAL JUDGMENT

GOLD, District Judge.

### I. INTRODUCTION

On February 20, 2001, the jury rendered a Special Verdict in favor of the Class Dealers [D.E. # 1395].[1] Following the rendition of the Special Verdict, the Court held a status conference with the parties on March 1, 2001, to discuss post-verdict procedures, the entry of judgment, and the claims administration process. At the direction of the Court, the parties have filed a series of motions and memoranda ad-

---

1. The jury's Special Verdict is the culmination of a long and arduous process which began in 1991 and resulted in a mandamus proceeding before the Eleventh Circuit Court of Appeals, two jury trials, and the rendition of numerous substantive court orders. *See, e.g.,* April 21, 1998 *Order Denying Exxon's Motion for Summary Judgment On Count I* (Kehoe, J.) [D.E. # 908]; *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F.Supp.2d 1300 (S.D.Fla.1999); *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F.Supp.2d 1308 (S.D.Fla.1999) (setting forth the essential facts of the dispute); *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F.Supp.2d 1326 (S.D.Fla. 1999); *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F.Supp.2d 1335 (S.D.Fla.1999); and *Allapattah Servs., Inc. v. Exxon Corporation,* 188 F.R.D. 667 (S.D.Fla.1999).

dressing complex and novel matters of first impression since, as recognized by the parties, few class matters of this magnitude have proceeded to trial and verdict.[2] On June 7, 2001, the Court held oral argument and further directed the parties to file additional memoranda on certain specific issues [D.E. # 1427]. All such memoranda have been received and reviewed.[3]

In brief, the Plaintiffs contend that, based on the jury's verdict, they are entitled to entry of a final judgment for the total amount of the compensatory damages suffered by the class as a whole, plus prejudgment interest calculated in accordance with the laws of the 35 political jurisdictions in which the Dealers purchased motor fuel from Exxon during the class period (March 1, 1983, through August 31, 1994) ("Class Period"). According to Plaintiffs, the final judgment would reserve jurisdiction to establish and implement a claims administration procedure by which class members would claim their share of the purported common fund. Plaintiffs contend that Exxon would have no role or standing to participate in the claims administration process or to seek recovery of any unclaimed portion of the purported common fund created by the final judgment.

2. *See* Plaintiffs' Memorandum on Proposed Post Trial Procedures [D.E. # 1400], filed on February 28, 2001; Plaintiffs' Motion for Entry of Order on Procedure for Determination and Entry of Final Judgment [D.E. # 1409], filed on March 30, 2001; Plaintiffs' Memorandum in Support of Plaintiffs' Entitlement to Discretionary Award of Prejudgment Interest [D.E. # 1421], filed on May 25, 2001; Plaintiffs' Reply to Exxon's Memorandum Regarding Plaintiffs' Motion for Entry of Order on Procedure for Determination of Final Judgment [D.E. # 1424], filed on June 4, 2001; and Plaintiffs' Reply Memorandum In Support of Discretionary Award of Prejudgment Interest [D.E. # 1433], filed on June 21, 2001. *See also* Exxon Corporation's Proposed Orders, Objections and Requests for Briefing Schedule and Hearing [D.E. # 1397], filed on February 26, 2001; Submission of Defendant Exxon Corporation with Respect to Hearing Regarding Proposed Judgment and Post–Trial Proceedings [D.E. # 1399], filed on February 28, 2001; Response of Exxon Corporation in Opposition to Plaintiffs' Motion for Entry of Order on Procedure for Determination and Entry of Final Judgment [D.E. # 1416], filed on May 11, 2001; and Response of Exxon Corporation to Plaintiffs' Submission Regarding Entitlement to Discretionary Award of Prejudgment Interest [D.E. # 1423], filed on June 4, 2001.

3. *See* Memorandum of Exxon Corporation Regarding Supersedeas Bond [D.E. # 1430], filed on June 21, 2001; Memorandum of Exxon Corporation Regarding Entitlement to Set Off [D.E. # 1431], filed on June 21, 2001; Plaintiffs' Supplemental Memorandum Regarding Judicial Authority For Entry of Judgment in the Full Amount Awarded By the Jury [D.E. # 1432], filed on June 21, 2001; Plaintiffs' Supplemental Memorandum Regarding Subject Matter Jurisdiction [D.E. # 1435], filed on June 21, 2001; Plaintiffs' Response to Memorandum of Exxon Corporation Regarding Entitlement to Setoff [D.E. # 1441], filed on July 5, 2001; Plaintiffs' Response to Exxon's Memorandum Regarding Supersedeas Bond [D.E. # 1442], filed on July 6, 2001; Surreply of Exxon Corporation to Plaintiffs' Submission Regarding Entitlement to Discretionary Award of Prejudgment Interest [D.E. # 1443], filed on July 6, 2001; Response of Exxon Corporation in Opposition to Plaintiffs' Supplemental Memorandum Regarding Subject Matter Jurisdiction [D.E. # 1444]; Defendant's Memorandum in Response to Plaintiffs' Supplemental Memorandum Regarding Entry of Judgment [D.E. # 1445], filed on July 6, 2001; Reply Memorandum of Exxon Corporation Regarding Entitlement to Set Off [D.E. # 1449], filed on July 13, 2001; Reply Memorandum of Exxon Corporation Regarding Supersedeas Bond [D.E. # 1450], filed on July 13, 2001; Plaintiffs' Reply in Support of Supplemental Memorandum Regarding Subject Matter Jurisdiction [D.E. # 1451], filed on July 13, 2001; and Plaintiffs' Reply in Support of Supplemental Memorandum Regarding Judicial Authority for Entry of Judgment in the Full Amount Awarded by the Jury [D.E. # 1452], filed on July 13, 2001.

Exxon, on the other hand, views the form the final judgment would take and its participation in the claims process quite differently. First, Exxon claims that the Plaintiffs' proposed procedure would constitute a judicial taking of Exxon's property in violation of basic due process rights because it would necessarily result in a final judgment for more than the actual compensatory damages due to class members who may pursue their individual breach of contract claims. According to Exxon, Plaintiffs' proposal would accomplish this by reversing the process for entering a final judgment so that an aggregate amount of class-wide damages would be immediately entered before the total amount of actual compensatory damages claimed by individual class members on their separate breach of contract claims is determined. Exxon raises again its argument, based on recent case law, that the Court cannot enter an award of class-wide damages because it lacks subject matter jurisdiction over the claims of many class members.

Second, Exxon disputes Plaintiffs' contention that, after an aggregate damage award is entered, Exxon would not be entitled to recover any portion of the proposed award that is not claimed as actual compensatory damages by individual class members. Exxon also disagrees with the suggestion that it would not be permitted to participate in the claims administration process. According to Exxon, to require it to pay additional sums or to prevent it from recovering any sums that remain after a claims process is completed serves no compensatory purpose and, therefore, constitutes punitive relief that is expressly prohibited by the Uniform Commercial Code. For the same reason, Exxon claims it is entitled to participate in the claims administration process to ensure that, through duplicate claims or otherwise, no class member receives more than the compensatory damages to which he or she is entitled. In addition, Exxon claims that it is entitled to assert rights of set-off against class members who file claims.

Third, Exxon claims that Plaintiffs' proposed procedure does not address the issues involved in attempting to award prejudgment interest under the laws of different states on the basis of the Special Verdict rendered in Plaintiffs' favor. According to Exxon, there is no basis in the jury's verdict (or the trial record) for determining the amount of damages suffered by dealers in any particular state against which to apply the state's rate of prejudgment interest.

By this Order, the Court has endeavored to decide all issues posed by the parties and also to approve the form of the judgment to be entered on the Special Verdict in accordance with Fed.R.Civ.P. 58. Although not a final judgment, the Court shall utilize the procedures in 28 U.S.C. § 1292(b) to authorize an interlocutory appeal. For this reason, the Court has ordered Exxon to file its Rule 50 and 59 motions so that, if denied, those rulings could be considered as part of the § 1292(b) review. Each substantive issue is addressed below.

## II. WHETHER THE PLAINTIFFS ARE ENTITLED TO AN AGGREGATE JUDGMENT IN FAVOR OF THE CLASS AS A WHOLE?

### 1. Plaintiffs' Further Contentions.

■ As stated above, Plaintiffs claim that they are entitled to entry of a final judgment for the total amount of the compensatory damages suffered by the class a whole, plus pre-judgment interest

for the class as a whole calculated in accordance with the laws of the 35 political jurisdictions in which the Dealers purchased motor fuel from Exxon during the Class Period. Plaintiffs further claim that compensatory damages may be "ministerially computed" by the court by simply multiplying the jury's annual cents per gallon damage awards times the annual gallons of motor fuel purchased by the Class Dealers as reported in the electronic database of motor fuel volumes produced by Exxon, which Plaintiffs have accepted as correct. Plaintiffs next assert that the same annual cents per gallon damage figures also provide the means to accurately calculate pre-judgment interest by state, by year, in accordance with the laws of the 35 political jurisdictions. Finally, because Exxon's Dealer Volume Database reports Class Dealer motor fuel purchases on a store level basis, the Plaintiffs contend that the jury's cents per gallon damage award also provides a precise means of allocating damages among individual class members in the claims administration process.

## 2. Analysis.

In analyzing Plaintiffs' contentions, it is first necessary to determine what the jury did, then whether, and under what authority, the Court may enter an aggregate judgment for both compensatory damages and prejudgment interest, and, finally, to consider the propriety of entering such a proposed final judgment given the facts and circumstances of the case.

### a. What Did the Jury Decide by its Special Verdict?

In *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F.Supp.2d 1335, 1342 (S.D.Fla. 1999), this Court stated that, "the ultimate question for the jury is whether Exxon initially gave, and then 'took back' the [DFC] adjustment in total as of March 1, 1983 through August, 1994?" By its Special Verdict, the jury determined that Exxon was liable to the Class Dealers for the "take back," and that it had failed to reduce the wholesale price of motor fuel for the Class Period. The jury then determined the time period by year in which the failure to reduce the wholesale price occurred and the amount, in cents per gallon, by which Exxon failed to provide the reduction [*See* D.E. # 1395].

As is self-evident from the Special Verdict, the jury did not award aggregate compensatory damages in favor of the Plaintiffs. To do so and derive a true aggregate award, the jury would have had to further reduce the total number of gallons of motor fuel sold during the Class Period to account for "opt outs," as well as to make further reductions based upon Exxon's valid affirmative defenses, including statute of limitations in Ohio. Obviously, the Plaintiffs recognize the necessity for such reductions because, in their proposed procedure, Plaintiffs request the Court to do what the jury did not do; that is, to "ministerially" undertake such an analysis and render an aggregate damage award for the class in the form of a final judgment.

If the jury did not render an aggregate compensatory damage award, what did the jury do by its Special Verdict? Besides finding for Plaintiffs on issues of liability and causation, the jury, in accordance with Fed.R.Civ.P. 49(a), determined class damages in the form of a common guideline or factor [cents per gallon on a year to year basis during the Class Period]. Otherwise

stated, the jury did not itself award aggregate class damages or a "fluid verdict"[4]; rather, the jury decided the applicable factor or guideline that will apply to determine the measure of damages of each Class Dealer during the claims administration process without resort to an aggregate fund.

### b. Given the Jury's Special Verdict, Under What Authority May the Court Now Ministerially Enter An Aggregate Final Judgment for Compensatory Damages and Prejudgment Interest?

Plaintiffs' briefs did not initially address this question. At oral argument, and in subsequent briefs, Plaintiffs' counsel argued that such authority is provided by virtue of the parties' own stipulation and by Fed.R.Civ.P. 23, 49, and 58. Exxon vigorous denies any such stipulation, or that any rule of civil procedure authorizes the Court to act as Plaintiffs' request.

### i. Stipulation between the parties

Plaintiff argues that, while Exxon did not stipulate to a class-wide damage calculation, it did stipulate to the facts upon which a class-wide damage calculation can be administratively accomplished by the Court post-trial. [D.E. # 1432, p. 7]. In support, Plaintiff relies on the transcript of the first trial [Transcript, Trial I at 3024:13–3028:16], as well as a written stipulation between the parties concerning the submission of damages to the jury on a cents-per-gallon basis using the volumes of both gasoline and diesel fuel [Exhibit "A" to D.E. # 1432].

However, the 'stipulation' agreement submitted by Plaintiff as Exhibit A to its Supplemental Memorandum Regarding Judicial Authority for Entry of Judgment in the Full Amount Awarded by the Jury [D.E. # 1432] is not signed by both parties and constitutes merely an offer by Exxon, which Plaintiffs apparently rejected, to stipulate to a procedure for recalculating Plaintiffs' proposed measure of damages in the event the Court permitted them to assert claims for sales of diesel fuel, subject to a number of contingencies, such as exhaustion of appeals. The offer expressly states that it was, "not intended as, nor shall it constitute, a waiver of any objection by Exxon to plaintiffs' proposed calculation of damages, including, but not limited to, whether damages should be calculated on a cents-per-gallon basis ..." *See* Exhibit "A" to D.E. # 1432 at ¶ 3. The proposed stipulation also specifies that Plaintiffs' recalculated cents-per-gallon damages number was to be used for the sole purpose of allocating damages among class members who submit appropriate claims. *Id.* at ¶ 2(c). In sum, the document presented by Plaintiffs is not a binding stipulation between the parties to the facts upon which a class-wide damage calculation can be administratively accomplished by the Court post-trial, and by its very terms it would not provide authority for the Court to enter an aggregate final judgment. Accordingly, I find that there was no stipulation between the parties that would provide authority for the Court to ministerially enter an aggregate final judgment for compensatory damages and

---

4. A fluid verdict occurs when damages are calculated in the aggregate and individual claims are satisfied out of an aggregate fund. *See Pruitt v. Allied Chem. Corp.,* 85 F.R.D. 100, 114 (E.D.Va.1980) (stating that fluid recovery may occur when damages are calculated in aggregate and individual claims are satisfied out of aggregate fund).

prejudgment interest.[5]

### ii. Federal Rules of Civil Procedure

Plaintiffs argue that Rule 58[6] and Rule 23[7], read together, require the Court to enter final judgment on the Special Verdict, and that Rule 49[8] specifically contemplates that the Court will use the jury's findings to enter aggregate damages in a final judgment. Exxon argues in response that the Federal Rules of Civil Procedure do not compel the Court to enter an aggregate award of damages equal to the total damages suffered by the class. The Court concurs with Exxon that the Rules do not establish an independent legal basis for this Court to ministerially aggregate compensatory damages in a final judgment when the jury made no such findings in its Special Verdict, and where the adjustments required by the Court are beyond what are "self-evident" mathematical calculations based on the jury's Special Verdict. Beyond that, the obstacles to awarding prejudgment interest on a class basis preclude an aggregate final judgment even if one could be rendered within the Court's discretion for compensatory damages.

Rule 58 and Rule 23 state that the Court shall promptly approve the form of the judgment after entry of the Special Verdict and that, in a 23(b)(3) class action, the judgment shall describe those to whom notice was provided and have not requested exclusion, and whom the court finds to be members of the class. Nothing in either Rule contemplates or accounts for

---

5. A review of the trial transcript identified by the Plaintiffs also provides no authority for their contentions. The parties have vigorously disputed every aspect of this case, and the appropriate means of calculating damages is no exception.

6. Rule 58 of the Federal Rules of Civil Procedure provides, in pertinent part:
 [U]pon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it.

7. Plaintiffs rely on Rule 23(c)(2), which requires notice to all members of a(b)(3) class action that, among other things, "the judgment, whether favorable or not, will include all members who do not request an extension." Fed.R.Civ.P. 23(c)(2). Furthermore, Rule 23(c)(3) provides that, "[t]he judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subsection (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class." Fed. R.Civ.P. 23(c)(3).

8. Plaintiffs rely expressly on Rule 49(a), which states:

**Special Verdicts.** The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

adjustments being made to a final damage award, as is required in this case. These adjustments include determining the following: (a) the damages attributable to sales to dealers who elected to "opt-out" of the class; (b) the damages attributable to sales to dealers whose claims are barred by the applicable statutes of limitations; and (c) the damages attributable to sales covered by releases.

Furthermore, Rule 49(a) also fails to set forth the authority for Plaintiffs' requested relief. While the Court concurs with the Plaintiffs that, in certain limited circumstances, a ministerial aggregating process may be performed by the court, this case is distinguishable from the cases that have utilized such an approach. For example, in *John R. Lewis Inc. v. Newman*, 446 F.2d 800 (5th Cir.1971), the jury returned a special verdict pursuant to Rule 49 and found that the defendant was liable for the value of certain stocks sold to the plaintiff, and that each share of stock had a fair market value of $10.47½. The trial judge then rendered judgment by multiplying this figure by 10,000, or the number of shares sold to each of the two plaintiffs. Unlike this case, the number of plaintiffs in *John R. Lewis* was limited to two, the measure of damages of each share of stock was the same, and the total number of stocks was expressly found by the jury. The case at bar requires calculation of damages for a class of potentially over ten-thousand plaintiffs, the exact number of which is subject to several as yet to be completed adjustments.

Plaintiffs also rely on *McBrayer v. Teckla, Inc.*, 496 F.2d 122 (5th Cir.1974). In *McBrayer*, the jury found in a special verdict that the plaintiff, a single individual, would have sold 46,000 units of his product if not for the defendant's wrongful conduct, and the trial judge entered judgment in the amount of $46,000 by multiplying the number of units by the value of the product ($1/unit). The appellate court reversed, finding that the jury lacked a valid basis for concluding that 46,000 units would have been sold during the contract term. *McBrayer*, 496 F.2d at 127–28. The appellate court did not specifically address the propriety of the district court's act of multiplying the number of units found by the jury by the price per unit. As such, *McBrayer* is of little, if any, precedential value. Furthermore, *McBrayer* clearly did not involve the application of the number of adjustments of the magnitude required in this case in order to reach a final damage judgment.

In sum, there is nothing in the Federal Rules of Civil Procedure that requires the Court to enter a final judgment containing an aggregate damage award at this stage of the proceedings. Even if such authority is implied in limited, self-evident circumstances, its application, as a matter of discretion, is inappropriate here. Unlike the simplified example provided by Plaintiffs of a case in which the jury special verdict says, "We find that the parties had a contract for the sale of 100 widgets. We find that the defendant failed to deliver the widgets. We find that the widgets were worth $4 each," and the Court then performs the ministerial function of multiplying the two amounts and entering a final judgment for the plaintiff of $400 [*see* D.E. # 1432, p. 11–12], the Special Verdict in this case does not lend itself to such treatment. There was never any discussion, agreement, or consideration by the parties or the Court that such a procedure would be followed, because it was always known that there would be significant unclaimed amounts. No discussion occurred at any time to create a *cy pres* fund. The Special

Verdict form was limited to finding a common damage factor to measure individual compensatory damages, and, given the lack of any agreement to the contrary and the unique nature of the class and the required adjustments to the total damage amount, it would be inappropriate for the Court to go beyond the Special Verdict form to enter an aggregate compensatory and prejudgment interest award to the class.

**c. Does the Case Law Provide Authority for the Court to Ministerially Calculate Aggregate Damages and Enter Final Judgment Therefor?**

■ Plaintiffs argue, in their "Reply to Exxon's Memorandum Regarding Plaintiffs' Motion for Entry of Order on Procedure for Determination and Entry of Final Judgment" [D.E. #1424], that, "Consistent with the provisions of the Rule [Fed. R.Civ.P. 23(c)(3)], the federal trial and appellate courts have regularly entered or approved of lump sum judgments for the aggregate amount of compensatory damages suffered by all class members in common fund, contract-based class actions brought under Rule 23(b)(3)." In support, Plaintiffs cite to *Boeing Co. v. Van Gemert*, 444 U.S. 472, 475–77, 100 S.Ct. 745, 748, 62 L.Ed.2d 676 (1980); *Nelson v. Greater Gadsden Hous. Auth.*, 802 F.2d 405, 408–09 (11th Cir.1986); *Fogie v. THORN Am., Inc.*, 190 F.3d 889, 904–05

(8th Cir.1999); and *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir.1990).

During oral argument, however, Plaintiffs conceded that none of these cases directly hold that a district court may ministerially calculate aggregate damages in the absence of a jury verdict to that effect. Upon independent review, the Court reaches this conclusion as well.

In *Boeing*, for instance, the Supreme Court did not expressly decide the propriety of an aggregate judgment in a class action context, because the issue was never raised on appeal.[9] Rather, the precise question presented in the class action case was whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by judgment. *Boeing*, 444 U.S. at 473, 100 S.Ct. at 747. There, the district judge entered a judgment which awarded a determinate fund for the benefit of every member of the class whom the plaintiffs represented. Boeing did not appeal the judgment awarding the class a sum certain. *Id.* at 479, 100 S.Ct. at 750. Although Boeing argued before the Supreme Court that the judgment fund conferred no benefit on class members who failed to claim against it, the Supreme Court determined that, "[n]othing in the [district] court's order made Boeing's liability contingent upon the presentation of individual

9. In *Boeing*, the district court awarded as damages the difference between the redemption price of the outstanding debentures and the price at which two shares of Boeing's common stock traded on the last day for exercising conversion rights. *See Boeing*, 444 U.S. at 474–75, 100 S.Ct. at 747. By its judgement, the district court ordered Boeing to deposit the principal sum of $3,289,359 into an escrow account, which was then ad-

ministered by a Special Master. *Id.* at 476 n. 3, 100 S.Ct. at 748 n. 3. Thus, it appears that, unlike this case, the district judge awarded aggregate lump sum damages to the class. Class members who had filed individual claims also contended that they were entitled to receive pro rata shares of any unclaimed damages, or that they should receive enough of the unclaimed money to pay their legal expenses. *Id.* at 475, 100 S.Ct. at 747.

claims." *Id.* at 481 n. 5, 100 S.Ct. at 750 n. 5. The Court further stated that, "[s]ince there was no appeal from the judgment that quantified Boeing's liability, Boeing presently has no interest in any part of the fund." *Id.* at 481, 100 S.Ct. at 751. Consequently, the Supreme Court assumed the propriety of the district judge's final judgment since it never was appealed. Moreover, there is no indication in *Boeing* that the district judge reached an aggregate class damage by following a procedure comparable to that proposed by Plaintiffs in this case.

In *Nelson v. Greater Gadsden Hous. Auth.,* 802 F.2d 405 (11th Cir.1986), tenants in a public housing complex brought suit for injunctive relief and monetary damages in a class action involving utility allowances to tenants in a public housing complex. The district court found that the defendant, Greater Gadsden, breached a contractual duty to comply with applicable HUD regulations. Evidently, the district court determined the amount of compensatory damages on summary judgment. In that regard, the Eleventh Circuit stated: "The district court's calculations were based on data agreed to by all parties, abut which there was no genuine issue of fact." *Nelson,* 802 F.2d at 409. Under the district judge's order, any compensatory damages which were not claimed within a specified period of time were to be used by Greater Gadsden to increase the energy efficiency of the apartment units or to improve the defendant-supplied appliances within the units. *Id.* at 409. The Eleventh Circuit did not reject the district court's approach as an improper "fluid recovery," partially because the plaintiffs had proven individual damages based on individual usages. Accordingly, nothing in *Nelson* supports a ministerial calculation of aggregate damages where the judge is not the trier of fact.

#### d. Is this a "Common Fund" Case Upon Which a Aggregate Final Judgment Can Be Entered?

The answer is "no." The issue of "common fund" never arose in this case until after the jury's Special Verdict. By *sua sponte* order [D.E. # 1422], the Court requested the parties to address the "common fund" issue at oral argument for purpose of further analyzing subject matter jurisdiction. There, Plaintiffs addressed "common fund" in a different context as well. Plaintiffs contended that the Court may enter an aggregate final judgment because the jury established a "common fund" by its Special Verdict. Exxon denies that this is a common fund case. The Court concurs with Exxon that the jury's Special Verdict did not establish a common fund, but only a "common damage factor" to measure individual compensatory damages. Although Exxon does not concede this, the jury also found a good faith duty "common to all class members" to reduce the wholesale price of motor fuel by an amount that, on average, offset the 3% credit card recovery fee during the Class Period.

The essential facts of the case were set forth in *Allapattah Servs., Inc. v. Exxon Corp.,* 61 F.Supp.2d 1308 (S.D.Fla.1999) (denying Exxon's renewed motion for summary judgment). For the most part, Plaintiffs established the same facts at trial. Plaintiffs established that every Sales Agreement in effect or entered into by Exxon and the Class Dealers during the Class Period contained an open price term, imposing a concurrent express duty to carry out the provisions of each Sales Agreement in good faith; that is, because of the nature of Exxon's obligation, each class member's individual sales agreement gave rise to a "collective" contractual duty to

the "dealer class as a whole" to reduce wholesale prices to offset the 3% fee imposed by Exxon to offset the cost of credit. The jury determined that Exxon breached its obligation to its Class Dealers [D.E. # 1395, p. 5].

While Plaintiffs convincingly argue that they have sought to enforce a right that is common to the class, and that such right is an indicia of a "common fund," what is missing to create a "common fund" is the *res* itself, such as a piece of land, an insurance policy, a lien, or an item of collateral, which the plaintiffs might claim as common owners or in which they might share a common undivided interest arising under a single title or right.[10] *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1263 (11th Cir.2000) ("Plaintiffs in paradigm 'common fund' cases assert claims to a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which they claim as common owners or in which they share a common interest arising under a single title or right.") (*quoting Gilman v. BHC Secs. Inc.*, 104 F.3d 1418, 1424 (2d Cir.1997)). Here, there is no such *res*. Instead, the Class Dealers are asserting rights arising from their individual Sales Agreements, and, because they were successful, they will recover the amount of excessive motor fuel charges each paid under his or her own sales agreement. The fact that this recovery may be obtained based on a common damage factor and shared duty does not convert separate and distinct claims for damages into a fund in which the class members have a common and undivided interest. *See Morrison*, 228 F.3d at 1264 ("The members of the Policyholder Class are asserting rights arising from their in-

dividual insurance policies, and if successful, they will recover the amount of excessive premiums each paid under his own policy. The fact that this recovery may be obtained under an equitable theory of unjust enrichment does not convert separate and distinct claims for damages into a fund in which the class members have a common and undivided interest.").

In sum, Plaintiffs may not equate a class member's interest in the total damage award sought by the class with the "joint and undivided" interest in a single claim or "res," as required by *Morrison,* and thereby justify the entry of an aggregate judgment. As the Second Circuit stated in *Gilman,* 104 F.3d 1418, 1424 (2d Cir.1997) (cited at length in *Morrison* ), "Gilman and his putative class have no joint interest other than a shared appetite for a money judgment payable by a single defendant— which is not the type of 'common and undivided interest' that warrants an exception to the rule against aggregating claims." *See also Gilman,* 104 F.3d at 1426 ("Such a 'fund' [damages from disgorgement of payments improperly retained] is created to facilitate the litigation process in virtually every class action and has nothing necessarily to do with whether the plaintiffs shared a pre-existing (pre-litigation) interest in the subject of the litigation ... what controls is the nature of the right asserted, not whether vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs.").

**e. Can the Court Enter a "Final Judgment" Based on the Jury's Special Verdict in this Case?**

The answer is "no." Pursuant to Fed. R.Civ.P. 49, the court may require a jury

---

10. While there is a unitary decision on a common damage factor, there is no fixed asset or piece of property in which all class members have a pre-existing interest, or where apportionment or determination of one class member's interest cannot be made without affecting the proportionate interests of other similarly situated class members.

to return only a special verdict in the form of a special written finding upon each issue of fact. Subsequent to the jury's rendering of a special verdict, the court, pursuant to Fed.R.Civ.P. 58, is to approve the form of judgment, and the Clerk of Court is to enter it. Under these rules, a court may only enter a judgment consistent with the jury's verdict. When multiple parties are involved, "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed.R.Civ.P. 54(b).

 Where, as here, the verdict does not determine an aggregate compensatory award to the class as a whole, it is not "final" as contemplated in Fed.R.Civ.P. 54, 58, or 23, although, under Rule 58 and 23(c)(3), a judgment entered is conclusive as to the factual matters decided. No final judgment can be entered until after individual class members have made claims and both the validity and the amount of the claims have been determined; that is, to be "final," the judgment must adjudicate all aspects of the claim, including compensatory damages and prejudgment interest for each class member. *See generally Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 742, 96 S.Ct. 1202, 1205–06, 47 L.Ed.2d 435 (1976) (no final, appealable judgment where "respondents, although having received a favorable ruling on the issue of petitioner's liability to them, received none of the relief which they expressly prayed for .... [T]hey requested

damages, but were not awarded any ...."); *In re Atlas*, 210 F.3d 1305, 1308 (11th Cir.2000) (noting that "where assessment of damages or awarding of other relief remains to be resolved [judgments] have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291") (*quoting In re Morrell*, 880 F.2d 855, 856 (5th Cir.1989)).

### f. What is The Propriety of Entering A Total Damage Aggregate Award In This Case?

The aggregate judgment issue did not arise during deliberation on jury instructions in either the first or second trial. If it had arisen, it would have been the subject of significant briefing and debate, since this is not a case where there is a statutory authorization for an aggregate award. *Compare Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir.1990) (permitting aggregate proof of damages where the plaintiff class sought statutory not actual damages under the FLCRA and, as such, was not obligated to prove actual injury for each class member). Properly so, the jury in this case determined by their Special Verdict only a class wide measure of damages which then can be assessed mechanically to determine individualized claims.

Beside the issues of legality of entering an aggregate award of compensatory damages when the jury has not done so, the Court must further consider the "propriety" of an aggregate compensatory and prejudgment interest award under the circumstances of the case, including the potential sizeable *cy pres* fund due to the prospect of substantial unclaimed funds.[11]

Plaintiffs' proposal envisions a signifi-

---

11. When an aggregate class recovery is not

fully allocated to class members, the un-

cant unclaimed fund [12] which, under any and all circumstances, it argues should not be returned to Exxon. As Plaintiffs' state: "Reverter is not an option in this case because Exxon does not have a legitimate claim to the money. If all rightful owners do not appear to claim their share, the money should not go back to Exxon, which wrongfully separated the true owners from their money in the first place." Plaintiffs' Reply to Exxon's Memorandum Regarding Plaintiffs' Motion for Entry of Order on Procedure for Determination and Entry of Final Judgment [D.E. #1424], at p. 22.

Where the goals of the underlying statute(s) upon which the class claims are based are strictly compensatory, at least one circuit has recognized that a class action resulting in substantial unclaimed funds will not further that goal. *See Six (6) Mexican Workers*, 904 F.2d at 1306 ("Where the goals of the underlying statute are strictly compensatory, a class action resulting in substantial unclaimed funds will not further that goal."). Nor is such a fund appropriate to relieve the plaintiff class of the burden of proving individual damages. *See Nelson*, 802 F.2d at 409. But, where the statutory objec-

tives include enforcement, deterrence or disgorgement, the class action may be the "superior" and only viable means to achieve these purposes, despite the prospect of unclaimed funds. *See Six (6) Mexican Workers*, 904 F.2d at 1306. Otherwise stated, the *cy pres* distribution of unclaimed funds is disfavored where it subjects defendants to greater liability or alters their substantive rights, unless there is a statutory purpose of deterrence or disgorgement. *See, e.g., In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir.1974) (rejecting an attempt to use fluid recovery or *cy pres* distribution to avoid the difficulty of proving each class members' specific injury because to do so would alter the defendants' substantive rights).

The Court concurs with Exxon that Plaintiffs' damages for breach of contract claims are limited, under the Uniform Commercial Code [13], to only compensatory damages, not consequential, special or punitive relief. By prior order, the Court denied Plaintiffs' claim for punitive damages. *See Allapattah Servs., Inc. v. Exxon Corp.*, 61 F.Supp.2d 1326 (S.D.Fla.1999).

U.C.C. § 1–106(1) specifically provides that remedies for breach of contract are

---

claimed portion may be distributed for the indirect or partial benefit of the class under *cy pres* principles, including fluid recovery doctrines. *Newberg on Class Actions*, § 10.16. As recognized by *Newberg*, *cy pres* distributions remain controversial from the defendant's perspective. *Id.*

Plaintiffs argue that any unclaimed monies rightfully belong to injured class members and that to deny a *cy pres* approach is to give a windfall to a wrongdoer. At first blush, Plaintiffs' argument seems persuasive, but it is not supported by convincing precedent in class actions of this nature. All litigation presumes a desire on the part of the judicial establishment to make the wrongdoer pay for wrongs he, she or it has committed. However, the court only is to do so by applying settled or clearly stated principles of law,

rather than by some process of divination. *See Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005, 1013 (2nd Cir.1973), *vacated on other grounds by Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

12. While the Court cannot anticipate the exact magnitude of an unclaimed fund, Exxon estimates that it would represent approximately $125 million, which Plaintiffs do not contest.

13. The Court has found, and the parties have agreed, that the law applicable to this cause is the Uniform Commercial Code, which has been uniformly adopted in all applicable jurisdictions, with the exception of Louisiana.

designed so that, "the aggrieved party [the individual dealer] may be put in as good a position as if the other party [Exxon] had performed." This provision also states unequivocally that, "neither consequential or special nor penal damages may be had except as specifically provided in this Act or by other rule of law." *Id.* As the U.C.C.'s Official Commentary notes, this provision was intended "to make it clear that compensatory damages are limited to compensation," and that "[t]hey do not include consequential or special damages, or penal damages." U.C.C. § 1–106, Official Comment 1.

Thus, under U.C.C. principles, once all class members who assert valid claims are made whole, the compensatory purpose of any damage award has been completely satisfied. To the extent that any aggregate award exceeds the total amount of such damages, it no longer serves the compensatory purpose of damages relief under U.C.C. § 1–106 and becomes punitive in nature. Such an award would thereby violate Exxon's substantive rights under the Uniform Commercial Code and would be contrary to the Rules Enabling Act, which specifically provides that procedures under the Federal Rules of Civil Procedure, including Rule 23(b)(3), "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). *See In Re: Hotel Tel. Charges,* 500 F.2d 86, 90 (9th Cir.1974) ("We agree with the decision reached in *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005 (2d Cir.1973), that allowing gross

damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights .... Such enlargement or modification of substantive statutory rights by procedural devices is clearly prohibited by the Enabling Act that authorizes the Supreme Court to promulgate the Federal Rules of Civil Procedure."). *See also Abrams v. Interco Inc.,* 719 F.2d 23, 31 (2nd Cir.1983) (reaffirming the Second Circuit's rejection of "fluid" class recovery in antitrust class actions). *But see Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1306 (9th Cir.1990) (affirming award of "in gross" judgment in class action under Farm Labor Contractor Registration Act, distinguishing *Eisen* and *In re Hotel* on the basis that statutory, per-violation damages under Act—unlike antitrust or security damages—did not require individual proof of actual damages).

In addition to the problem of whether an in-gross award bypasses the need for individual proof of damage, there are serious questions as to whether an aggregate award of damages will significantly overstate the entitlement of the Class Dealers to those damages. The likelihood of potentially significant "unclaimed damages" from an aggregate or lump award, and the consequent punitive effect, is compounded in this case because of the very real possibility that the Court may lack subject matter jurisdiction over the claims of a number of putative class members.[14]

Here, each Dealer's breach of contract claim is based on diversity jurisdiction un-

---

**14.** Notwithstanding the Circuit split, the Court stands by its "Order on Plaintiffs' Motion for Partial Summary Judgment Regarding Subject Matter Jurisdiction" [D.E. # 1122]. The Court's reasons are stated in *Leszczynski v. Allianz Ins. Co.,* 176 F.R.D. 659 (S.D.Fla.1997). A far better statement of the same reasons appears in *Poore v. American–Amicable Life Ins. Co. of Texas,* 125 F.Supp.2d

1378, 1382–1384 (S.D.Ga.2000), which I incorporate by reference.

Here, the Magistrate Judge, while recognizing that some plaintiffs exceed the minimum jurisdictional amount in this case, concluded that *Zahn* applies such that each plaintiff in a class action rounded on diversity must exceed the minimum jurisdictional requirements, but denied Exxon's motion to dismiss for lack un-

der 28 U.S.C. § 1332. Although the Court has previously ruled that it has supplemental jurisdiction under 28 U.S.C. § 1332, *see* July 1, 1999 "Order on Plaintiffs' Motion for Partial Summary Judgment Regarding Subject Matter Jurisdiction" [D.E. # 1122], the resolution of this issue in the Eleventh Circuit remains far from clear. In the event subject matter jurisdiction is lacking, the Court cannot include in an aggregate damage award those claims of class members over which it has no jurisdiction. To do so would expose Exxon to potential double liability in the event it is successfully sued in state court by a class member who is dismissed for lack of subject matter jurisdiction. Moreover, in the event of remand, untangling those class members who are included in a gross award, but who do not meet threshold jurisdictional amounts, will necessitate a second inquiry into the value of each dealer's claim if Plaintiffs' proposal is followed. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) ("The intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts. . . . [I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."). Under Exxon's proposal, both inquires can be conducted simultaneously during the claims process.

Most recently, the Court of Appeals for the Eighth Circuit has ruled that 28 U.S.C. § 1367 does not overrule the Supreme Court's holding in *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), and that every member of a class asserting state law claims must satisfy the minimum jurisdictional amount of the diversity statute. *See Trimble v. Asarco, Inc.*, 232 F.3d 946, 961 (8th Cir.2000). As a result of this decision, the Eighth Circuit now joins the Court of Appeals for both the Third and Tenth Circuits to form a majority of federal courts that have held that *Zahn* continues to govern subject matter jurisdiction of federal district courts in class action claims. *See Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214 (3rd Cir.1999) and *Leonhardt v. Western Sugar Co.*, 160 F.3d 631 (10th Cir.1998). While the Eleventh Circuit has recognized this split of authority, and the equal division of eight members of the United States Supreme Court on the issue, *see Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1262 n. 5 (11th Cir. 2000), it has not yet had occasion to announce its position on the issue.

In formulating a post-judgment procedure, this Court cannot discount the possibility that the Eleventh Circuit may align itself with the majority of the other Circuits by concluding that the 1990 amendments to 28 U.S.C. § 1367(a) did not overrule *Zahn* and extend supplemental jurisdiction to the claims of an entire class once the claim of at least one class member satisfies the requisite amount in controversy. Under such circumstances, Exxon's argument that a lump sum award is inherently punitive, rather than com-

---

subject matter jurisdiction on other grounds. *See* D.E. # 338, p. 3. Judge Kehoe denied Exxon's objections without opinion. *See* D.E. # 362. Exxon has never disputed that some

of the named plaintiffs and putative class members individually exceed the minimum jurisdictional requirements.

pensatory, is enhanced, particularly when considered in light of Plaintiffs' further request to preclude Exxon from recovering any unclaimed funds remaining after the payment of all valid claims.

To summarize, the Court denies Plaintiffs' request that a final judgment be entered for the aggregate sum of the total damages, as adjusted. Rather, the Court shall direct the Clerk of Court to enter judgment in the manner set forth in Attachment A to this Order. In addition, the Court, by this Order, shall rule on all remaining outstanding issues affecting the claims administration process and request the Eleventh Circuit to review these matters before such an administration process is implemented.

### III. ISSUES AFFECTING THE CLAIMS ADMINISTRATION PROCESS

The Court must establish and conduct a claims process whereby the named plaintiffs and putative class members can present their claims. Within that process there are certain discrete issues which will affect the extent of the claims that certain individual class members can make or recover and the manner by which such claims are calculated. These include:

### 1. Calculation of Individual Class Member Compensatory Damages.

The calculation of an award of compensatory damages to individual Class Dealers is straight-forward.[15] Compensatory damages to each dealer are mathematically derived from multiplying the cents per gallon damage award determined by the jury in the Special Verdict times the total number of gallons of motor fuel purchased by that dealer over the period of March 1, 1983, until August 29, 1994, as established by Exxon's Dealer Volume Database on a store level basis, less reductions, if any, required based on statute of limitations in Ohio, and Category-four releases in Delaware.[16] Thus, the award of compensatory damages to an individual class member will involve: (i) identifying the station or stations at which the class member was a dealer; (ii) determining the time period during which the class member was a dealer at that station, and (iii) multiplying the gallons of motor fuel sold to that station during that period by the measure of damages applicable during that time period.

### 2. Inclusion or Exclusion of Diesel Fuel Purchases In the Calculation of Compensatory Damages.

The Court had previously reserved to consider Exxon's motion to exclude diesel fuel purchases from the computation of total motor fuel volumes. The issue that requires resolution is whether gallons of diesel fuel Exxon sold to the Dealers during Discount for Cash, as opposed to gallons of gasoline, are properly included within the class claims. The Court now

---

**15.** For a more detailed discussion of the appropriateness of the compensatory award, see the discussion *infra*, at section III(4), pertaining to the award of prejudgment interest.

**16.** See discussion in *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 684 n. 26 (S.D.Fla.1999). In its "Response of Exxon Corporation in Opposition to Plaintiffs' Motion for Entry of Order on Procedure for Determination and Entry of Final Judgment,"

Exxon contends that the Court made no ruling with regard to general releases that were entered during the period between "disclosure" and class certification. *See D.E. 1416* at p. 22. The Court respectfully disagrees. These releases fall within the category of "pre-certification Releases," and, in light of the Special Verdict findings, may not be enforced.

concludes that diesel fuel purchases are to be included in the calculation of class members' compensatory damages.

■ Exxon contends that Plaintiffs should not be permitted to amend their claims to include diesel fuel because it was not adequately pled in the Plaintiffs' amended complaint. Under Fed.R.Civ.P. 15(b), a court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved and where the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party's defense upon the merits. *See Menendez v. Perishable Distribs., Inc.,* 763 F.2d 1374, 1379 n. 3 (11th Cir.1985); *Harris v. Garner,* 216 F.3d 970, 996 (11th Cir.2000) ("[U]nder Rule 15(b), courts should allow amendments to conform the pleadings to the evidence both during trial, and even after judgment, as long as the opposing party cannot prove that he is thereby prejudiced."). Both elements are met in this case.

■ The record unequivocally establishes that Plaintiffs' claims have consistently encompassed Exxon's pricing of both gasoline and diesel fuel. Exxon's Discount For Cash program applied to both gasoline and diesel fuel (collectively referred to by Exxon as "motor fuel"). At the close of the Plaintiffs' case during the first trial, the parties stipulated that the Plaintiffs were not required to offer separate proof of the manner in which Exxon priced diesel fuel, that a finding by the jury that Exxon breached a duty in pricing gasoline would constitute a finding of breach with respect to the pricing of diesel fuel, and that for purpose of computing and allocating damages on a cents per gallon basis, the combined volumes of gasoline and diesel would be used [Trial I Transcript, 8/20/00, pp. 3024–28].

At the second trial, all prior stipulations remained in effect [D .E. # 1264]. As a result, during the second trial, the Court admitted into evidence, without objection, Plaintiffs' Exhibit Number "1," which is a summary schedule of the Class Dealers' damages, computed on a cents per gallon basis using volumes of both gasoline and diesel fuel. The jury's award of cents per gallon in the Special Verdict followed directly from the calculations reflected in this exhibit. Exxon has suffered no prejudice. It was well able to defend on the Plaintiffs' claim. Moreover, the merits of the cause would be subserved by not permitting the pleadings to be amended to conform to the evidence. Accordingly, Exxon's objection to the inclusion of diesel fuel is denied.

### 3. Application of Statutes of Limitation in Ohio and Florida.

The Court previously has found that Ohio and Florida do not recognize the fraudulent concealment doctrine as a legal avoidance to a statute of limitations defense. *See Allapattah Servs., Inc. v. Exxon Corp.,* 188 F.R.D. 667, 672 (S.D.Fla. 1999). In its initial briefs, Plaintiffs reargued these matters based the application of a fifteen year statute of limitations in Ohio [Ohio Rev.Code Ann. § 2305.06], and a recent Florida Supreme Court decision which Plaintiffs claim has clarified the application of the fraudulent concealment doctrine with respect to that state's statute of limitations and requires a different result than originally determined by the Court. *See Allapattah Servs.,* 188 F.R.D. at 675 n. 16 (concluding under Florida law that a fraudulent concealment claim cannot "toll" the statute of limitations).

### a. Ohio.

Since the filing of their initial briefs, Plaintiffs have conceded that the Ohio statute of limitations is applicable. Accordingly, gallons purchased by dealers residing in Ohio prior to May 1987 shall be excluded from the damage computation.

### b. Florida.

█ Florida has a five year statute of limitations for breach of contract claims that does not recognize "tolling" for fraudulent concealment. *See* Fla. Stat. § 95.11(2)(b). Plaintiffs claim that a recent Florida Supreme Court decision, *Hearndon v. Graham,* 767 So.2d 1179 (Fla. 2000), has changed Florida law since the Court's prior opinion, and that its cause of action did not "accrue" until November of 1990 under the "delayed discovery doctrine."

In *Hearndon,* the Florida Supreme Court addressed the following certified question: "Where a plaintiff in a tort action based upon child abuse alleges that she suffered from traumatic amnesia caused by the abuse, does *Fulton County Admin. v. Sullivan,* 22 Fla. L. Weekly S578 (Fla.1997), preclude judicial recognition of an exception to or a tolling of the statute of limitations based upon the doctrine of delayed discovery recognized in Chapter 92–102, Laws of Florida?" In response, the Florida Supreme Court held that the delayed discovery doctrine applies to the "accrual" of the instant cause of action. *Hearndon,* 767 So.2d at 1180. The Court receded from past decisions that applied the delayed discovery doctrine to toll the running of a statute of limitations. *Id.* at 1184. It held that the Florida Statutes do not impede the delay of the accrual of the cause of action. *Id.* The

Court also described the delayed discovery doctrine in this manner:

> The "delayed discovery" doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action. *See Hillsborough Community Mental Health Ctr. v. Harr,* 618 So.2d 187, 189 (Fla.1993); 35 Fla. Jur.2d Limitations and Laches § 60 (1996). The United States Supreme Court applied the "blameless ignorance" doctrine in *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), thereby delaying the accrual of a cause of action until the plaintiff reasonably discovered the right of action, reasoning that "the traditional purposes of statutes of limitations ... require the assertion of claims within a specified period of time after notice of the invasion of legal rights." *Id.* This Court adopted the doctrine into Florida law as the "delayed discovery" doctrine. *City of Miami v. Brooks,* 70 So.2d 306, 309 (Fla.1954). *See Kush v. Lloyd,* 616 So.2d 415, 418 (Fla.1992); *Creviston v. General Motors Corp.,* 225 So.2d 331, 334 (Fla.1969) (explaining that the "accrual of the [underlying cause of action] must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights"). Thus, application of the delayed discovery doctrine to the accrual of a cause of action and, therefore, to the running of a statute of limitation is not new to Florida law.

*Id.* at 1183.

Plaintiffs claim that, under Florida's "delayed discovery doctrine," their cause of action did not accrue, and the statute of limitations did not begin to run, until the Plaintiffs knew, or reasonably should have

known, of the act giving rise to the cause of action. *See id.* at 1184. Thus, in proving the elements of fraudulent concealment as found by the jury in the Special Verdict form, Plaintiffs claim that they also have established the identical elements which under Florida law would result in the non-accrual of their claim. In response, Exxon argues that *Hearndon* is limited to the particular tort claim involved and is inapplicable to accrual of breach of contract claims.

Plaintiffs arguments are persuasive that Florida law has changed since this Court's prior order addressing the issue. As a federal court sitting in diversity, I must apply the substantive law of the forum state. *Insurance Co. of N. Am. v. Lexow,* 937 F.2d 569, 571 (11th Cir.1991). While Exxon claims that *Hearndon* is narrowly limited, that position has been rejected by the Florida Fourth District Court of Appeals in *Monahan v. Davis,* 781 So.2d 436, 437 (Fla. 4th DCA 2001) ("Appellees argue that the delayed discovery doctrine does not apply to the causes of action here at issue … This narrow view of the delayed discovery doctrine is at odds with … *Hearndon* ...."). The appellate court stated that "[T]he supreme court's discussion of the delayed discovery doctrine demonstrates that it is rooted in the common law, not created by statute." *Id.* at 438. It further stated: "*Hearndon* held that the delayed discovery doctrine, when properly applied, operates to delay the *accural* of a cause of action." *Id.*

While *Monahan* admittedly did not apply to a contract claim based on common law, its analysis lends support to the argument that the Florida Supreme Court would reach the same conclusion even if contract claims were involved. *See Insurance Co. of N. America,* 937 F.2d at 571 (in applying state law, district court is to adhere to the decisions of the state's intermediate appellate courts absent some persuasive indiction that the state's highest court would decide the issue otherwise). Otherwise stated, Florida's "delayed discovery doctrine" would apply here in that, based on the jury's Special Verdict, the Plaintiffs did not know, nor reasonable should have known, of the breach of contract claim giving rise to the cause of action until November of 1990. [*See* D.E. # 1395, p. 15 (finding that the Dealers did not learn, or had sufficient facts to raise a suspicion and a duty to investigate that they had a claim against Exxon, until November 1990) ].

### 4. Entitlement to Prejudgment Interest.

The Court and the parties have recognized the complexity of the prejudgment interest problem in this case. Prior to trial, the Court addressed the matter of prejudgment interest to the extent practicable in *Allapattah Servs., Inc. v. Exxon Corp.,* 188 F.R.D. 667 (S.D.Fla.1999). There, the Court surveyed the law on prejudgment interest in the political jurisdictions in which Exxon dealers conducted business during the Class Period, and concluded: (1) the Plaintiffs' claims are liquidated [17]; (2) prejudgment interest is awarded as a matter of right in 29 of the 36 jurisdictions [Alabama, Arizona, Califor-

---

**17.** The Court concluded that in the jurisdictions in which prejudgment interest is awarded as a matter of right, the damages must be liquidated in nature. Based on the evidence presented at that time, the Court determined that Plaintiffs' breach of contract damages were liquidated, but reserved to issue a final ruling on this matter at the conclusion of trial. *Allapattah Servs.,* 188 F.R.D. at 685 n. 29.

nia, Colorado, Delaware, District of Columbia, Florida, Georgia, Kentucky, Louisiana, Maine, Maryland [18], Massachusetts, Montana, Nevada, New Hampshire, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, Washington [19], West Virginia, and Wyoming [20]]; (3) in all but three of the above stated jurisdictions [Arizona, Maine, and New Hampshire], interest accrues from the date of the breach [21], and in the remaining three jurisdictions, it runs from the date of filing the complaint [*i.e.*, May 13, 1991]; (4) in seven jurisdictions [Connecticut, Indiana, Mississippi, New Jersey, New Mexico, Tennessee, and Virginia], interest is discretionary, requiring the presentation of evidence in support of entitlement; (5) in those jurisdictions, the court decides whether the Plaintiffs' are entitled to prejudgment interest [in one jurisdiction, Virginia, the issue is for the

jury, but Exxon has waived a jury determination on this issue. *See* Trial I Transcript, 8/18/99, at pp. 2615/24–2616/1]; (6) in some of these remaining states the time of accrual of the right to prejudgment interest is specified by statute, and in others it is for the court's determination; and (7) the parties would be required to provide further details as to the applicable pre-judgment interest rates of the various states during the years at issue.

In its post-verdict submissions, Exxon has raised further challenges. Exxon contends that the Plaintiffs are not entitled to prejudgment interest as a matter of right in any state because: (1) there is no basis to determine the amount of "damages" subject to each state's prejudgment interest; and (2) the Plaintiffs' damages are not liquidated.[22] Where the Court has discretionary jurisdiction, Exxon further argues

---

18. For entitlement to prejudgment interest as a matter of right in Maryland, there must be an obligation to tender a certain sum upon a certain date. *See Allapattah Servs.*, 188 F.R.D. at 686 n. 32 [citation omitted]. Here, the jury found that Exxon failed to reduce the wholesale price of its motor fuel to offset its 3% fee to its Class dealers from March of 1983 through August of 1994 [D.E. # 1395, pp. 10 & 11]. This finding is sufficient to permit prejudgment interest as a matter of right in Maryland, since Exxon failed to reduce prices by a sum certain on dates certain.

19. In Washington, although entitlement to prejudgment interest on liquidated claims is a matter of right, a trial court, in its discretion, may reduce or disallow such interest upon a finding that the plaintiff unreasonably delayed in prosecuting a claim. *See Allapattah Servs.*, 188 F.R.D. at 686 n. 33 [citation omitted]. Here, the jury found by its Special Verdict that the Class Dealers learned, or their representatives had sufficient facts to raise a suspicion, and a duty to investigate, as of November of 1990 [D.E. # 1395, p. 15]. Based on this finding, there is no basis to reduce or disallow prejudgment interest on the ground that Plaintiffs unreasonably delayed prosecuting their claims.

20. Applying Wyoming law, Class Dealers in that state would be entitled to prejudgment interest as a matter of right within the Class Period from the earliest date when each Class Dealer purchased motor fuel from Exxon since each such dealer was entitled to a reduction on that date and was deprived of the beneficial use of the money. *See Allapattah Servs.*, 188 F.R.D. at 686 n. 34 (citations omitted).

21. For discussion of how prejudgment interest would be calculated from the date of breach, see sections III(4)(a) and III(5) of this order, *infra*.

22. Exxon also argues that the Court should not award prejudgment interest with respect to dealers who do not submit claims or to those class members over which the Court lacks subject matter jurisdiction. For reasons stated above, the Court concurs with Exxon that prejudgment interest may only be awarded to class members who submit claims. Moreover, if, upon further appellate review, it is determined that compensatory damages may not be awarded to class members who do not individually meet requisite diversity monetary requirements, then prejudgment interest

that the periods for any consideration of prejudgment interest should be limited, and, in any event, that the law of the seven discretionary states would not permit a discretionary award. Each issue is addressed separately below.

a. **Exxon's claim that prejudgment interest should not be awarded because there is no basis to determine the amount of damages subject to each state's prejudgment interest rate.**

Exxon contends that there is no evidence in the trial record (much less a jury finding) that dealers in any particular state were in fact overcharged (or if so, the amount of the overcharge). The Court disagrees. The record contains competent, substantial evidence upon which the jury's determination of a damage factor was based, and upon which the jury could reasonably rely.

■ When monetary relief is sought, and when data from each class member is required to assess individual recovery entitlement, it is appropriate for the class representatives to develop and prove common guidelines or formulae that will apply to determine the measure of recovery for each individual proof of claim. *Newberg On Class Actions,* § 10.01 (3d ed.1992). As noted in *Newberg:*

> Formulae for individual measurement of damages are most frequently found in securities fraud actions and in antitrust actions for price-fixing violations. Similar guidelines for individual measure of monetary relief are found in employment discrimination and other civil rights class actions. There are occasions when it is feasible and reason-

able to prove aggregate monetary relief for the class from an examination of the defendant's records, or by use of a common formula or measurement of damages multiplied by the number of transactions, units, or class members involved, or by reasonable approximation with proper adherence to recognized evidentiary standards.

*Id.*

■ The case law supports the calculation of compensatory damages [to which prejudgment interest will apply] through a common mathematical factor in a class context. *See Windham v. American Brands, Inc.,* 565 F.2d 59, 68 (4th Cir. 1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978) (if damages are capable of formula calculations, no manageability problem exists even though individual claims may exist); *Brown v. Pro Football, Inc.,* 146 F.R.D. 1, 5 (D.D.C.1992) (finding no manageability problem because the calculation of individual damages may be made by simple common formula); *Walsh v. Pittsburgh Press Co.,* 160 F.R.D. 527, 531 (W.D.Pa.1994) (determination of amount of recovery for each employee class member will be based on a manageable mathematical formula); *Hilao v. Estate of Marcos,* 103 F.3d 767, 782–86 (9th Cir.1996) (calculation of damages through random statistical sampling techniques affirmed, although court noted: "While the district court's methodology in determining valid claims is unorthodox, it can be justified by the extraordinarily unusual nature of this case.").

Here, Plaintiffs' proof of aggregate monetary damages [based on a finding of cents per gallon] was feasible and appropriate under the unique and highly unusual cir-

cannot be awarded to those class members either.

cumstances of this case. The proof was sufficiently reliable to permit a just determination of Exxon's liability within recognized standards of admissible and probative evidence in response to what Exxon, itself, represented to the Class Dealers.

To paraphrase the United States Supreme Court in *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250–51, 75 L.Ed. 544 (1931) ( an antitrust treble-damage action), where the breach itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. **In such case, while the damage may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damage as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise."** (emphasis added).

Based on their proof of the aggregate damage factor, as determined by the jury, there is ample basis for the Court to exercise its discretion to award prejudgment interest to individual Class Dealers who file verifiable claims arising in the discretionary states involved. The Court hereby so finds. Exxon had a good faith obligation to its dealers during the Class Peri-

od to reduce the wholesale price of motor fuel by an amount that, on average, offset the 3% credit card recovery fee during the Class Period [*See* D.E. # 1395, Special Verdict, p. 3]. Exxon's good faith obligation, by its very terms, was made to each dealer, and the class as a whole, regardless of whether that dealer utilized the discount for cash program. The jury found that Exxon failed to live up to this obligation. *Id.* at p. 5. The proof at trial was that, in March of 1983, in accordance with its secret business plan, Exxon took back in its entirety the offset it had initially provided, and never provided the offset again. Thus, after March of 1983, no dealer in any market at any time received any Discount For Cash offset whatsoever. This leaves the calculation of damages certain in amount, time [23] and location.[24]

It is now equitable to compensate the class dealers for lost earnings on a sum of money to which they were entitled. *See Allapattah Servs., Inc. v. Exxon Corp.,* 188 F.R.D. 667, 687 (S.D.Fla.1999) (recognizing that "the equitable purpose of prejudgment interest is to compensate a party for lost earnings on a sum of money to which it was entitled, but which has been retained by another") (citation omitted). The damage against which to apply each state's prejudgment interest rate is to be determined by multiplying the amount of the annual cents per gallon factor, as determined by the jury, by the volume of Exxon's sales to individual dealers in that state who submit verified claims, less any reductions required by virtue of statute of limitations in Ohio and Category–4 Releases in Delaware.

---

**23.** Plaintiffs established, and the jury found, damages on an annual cents per gallon basis because this was the shortest period of time that Exxon's business records reported credit cost recovery fee revenue.

**24.** Exxon's dealer volume database allows motor fuel volumes to be segregated on a state by state basis.

**b. Exxon's claim that the Court should not award prejudgment interest because Plaintiffs' damage claims are not liquidated.**

 Exxon contends that there is no evidence in the trial record to conclude that Plaintiffs' damages are liquidated on an individual or class basis. The Court disagrees. Plaintiffs' damage claim is in fact subject to mathematical computation without reliance on opinion or discretion. It is the total amount of damages suffered by the class as a whole; that is, the total dollars Exxon collected through the 3% fee. Exxon alone controlled the documents which made the calculation ascertainable with mathematical certainty and from which Exxon itself could have made a proper tender with reasonable certainty. The jury verdict establishing a "cents per gallon" damage factor now makes the application of damages mathematically precise to individual dealers based on volumes purchased. The combination of these factors satisfies the requirements in every jurisdiction with respect to the Plaintiffs' entitlement to prejudgment interest. *See Alfa Mut. Ins. Co. v. Beard,* 597 So.2d 664, 666–67 (Ala.1992) (liquidated where damages are reasonably ascertainable at time of breach, measured by fixed or established external standard, or by standard apparent from documents upon which plaintiffs based their claim); *Schade v. Diethrich,* 158 Ariz. 1, 760 P.2d 1050, 1063 (1988) (*en banc* ) (liquidated where the evidence furnishes data which makes it possible to compute the amount of claim with exactness, without reliance upon opinion or discretion); *Woodline Motor Freight, Inc. v. Troutman Oil Co., Inc.,* 327 Ark. 448, 938 S.W.2d 565, 568 (1997) (prejudgment interest where the amount of damages is liquidated as a dollar sum, or if damages are definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion); *Segura v. McBride,* 5 Cal. App.4th 1028, 7 Cal.Rptr.2d 436, 444 (1992) (liquidated, as codified in Cal. Civ.Code § 3287, where damages are certain or capable of certainty through calculation); *Rotenberg v. Richards,* 899 P.2d 365, 367–68 (Colo.Ct.App.1995) (liquidated where contract sets forth method for determining amount due); *Four D's Inc. v. Mattera,* 1990 WL 290083, *3 (Conn.Super.Ct.1990), *aff'd,* 25 Conn.App. 308, 594 A.2d 484 (1991) (liquidated where claim is for an amount certain or susceptible of being made certain by mathematical calculations from factors which are or ought to be in possession or knowledge of the party to be charged); *Jarrell v. Delchester Oil Co.,* 1993 WL 189495, *1 (Del.Super.Ct.1993) (prejudgment interest where damages are liquidated or where amount of recovery is calculable); *District of Columbia v. Pierce Assocs., Inc.,* 527 A.2d 306, 311 (D.C.1987) (liquidated where claim is an easily ascertainable sum certain at time it arises); *Argonaut Ins. Co. v. May Plumbing Co.,* 474 So.2d 212, 215 (Fla.1985) (claim is liquidated and entitled to prejudgment interest if claimant has obtained verdict for out-of-pocket pecuniary loss); *Holloway v. State Farm Fire & Cas. Co.,* 245 Ga.App. 319, 537 S.E.2d 121, 124 (2000) (liquidated where amount is certain and fixed, either by the act and agreement of the parties or by operation of law); *Thor Elec., Inc. v. Oberle & Assocs.,* 741 N.E.2d 373, 377 (Ind.Ct.App.2000) (no liquidated distinction, but prejudgment interest allowed where damages are ascertainable in accordance with fixed rules of evidence and where only a simple mathematical calcula-

tion is required)[25]; *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 141 (Ky.1991) (liquidated where damages are made certain or fixed by agreement of parties or by operation of law); *IP Timberlands Operating Co., Ltd. v. Denmiss Corp.*, 657 So.2d 282, 315 (La.Ct.App.1995) (no liquidated distinction, but prevailing party is entitled to interest from date of breach if amount due is ascertainable); *Osgood v. Osgood*, 698 A.2d 1071, 1073 (Me.1997) (no liquidated distinction, but prejudgment interest to compensate an injured party for the inability to use money rightfully belonging to that party between the date suit is filed and the date judgment is entered); *United Cable Television of Baltimore Ltd. P'ship v. Burch*, 354 Md. 658, 732 A.2d 887, 894–95 (1999) (liquidated where claim is a sum certain); *Weiss v. Augat, Inc.*, 2000 WL 1765434, *4 (Mass.Super.2000) (no liquidated distinction; prejudgment interest given as of right where necessary to compensate a party for the loss of the use of his money and in order to make the party whole); *Simpson v. State Farm Fire and Cas. Co.*, 564 So.2d 1374, 1380–81 (Miss. 1990) (liquidated where certain or capable of being made certain by mere calculation); *Kelleher Law Office v. State Comp. Ins. Fund*, 213 Mont. 412, 691 P.2d 823, 826 (1984) (liquidated where claim is capable of ascertainment by reference to an agreement or simple mathematical calculation); *Close v. Isbell Constr. Co.*, 86 Nev. 524, 471 P.2d 257, 260 (1970) (no liquidated distinction, but prejudgment interest where value of contract is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices); *McLaughlin v. Union–Leader Corp.*, 100 N.H. 367, 127 A.2d 269, 271 (1956) (no liquidated distinction, but pre-

judgment interest where money was due but unpaid); *Reliable Water Co. v. Monroe Township Mun. Utils. Auth.*, 146 N.J.Super. 291, 369 A.2d 949, 950–51 (1977) (liquidated where sum certain can be determined from formula even where obligation is disputed); *Bachman Chocolate Mfg. Co. v. Lehigh Warehouse & Transp. Co.*, 1 N.J. 239, 62 A.2d 806, 808 (1949) (interest allowed where damages are readily ascertainable or where amount of loss is ascertainable by a fixed standard forming a rational basis for the computation); *Lucero v. Aladdin Beauty Colls., Inc.*, 117 N.M. 269, </proga@dd>871 P.2d 365, 368 (1994) (liquidated where fixed and ascertainable); *Gunnarson v. State*, 70 N.Y.2d 923, 524 N.Y.S.2d 396, 398, 519 N.E.2d 307 (1987) (liquidated where damages are fixed, but prejudgment interest regardless of whether claim is liquidated); *Lazenby v. Godwin*, 60 N.C.App. 504, 299 S.E.2d 288, 291 (1983) (liquidated where amount of claim is obvious or easily ascertainable); *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 652 N.E.2d 687, 690–91 (Ohio 1995) (liquidated where damages are capable of ascertainment by reasonably certain calculations, or debts of a sum certain); *Erickson Hardwood Co. v. North Pacific Lumber Co.*, 70 Or.App. 557, 690 P.2d 1071, 1079 (1984) (liquidated where damages are ascertainable by simple calculation or by reference to generally recognized standards such as market price); *Burkholder v. Cherry*, 414 Pa.Super. 432, 607 A.2d 745, 748 (1992) (liquidated where amount due is ascertainable); *Enterprise Garnetting Co. v. Forcier*, 69 R.I. 455, 35 A.2d 1, 5 (1943) (liquidated where obligation to pay a sum certain at a fixed time); *Builders Transport, Inc. v. South Carolina Prop. and Cas. Ins. Guar-*

---

**25.** Some states do not expressly classify damages as liquidated or unliquidated, but look to similar considerations such as whether the damages are readily ascertainable by mathematical calculation. *See, e.g., Close v. Isbell Constr. Co.*, 86 Nev. 524, 471 P.2d 257, 260 (1970); *Reliable Water Co. v. Monroe Township Mun. Utils. Auth.*, 146 N.J.Super. 291, 369 A.2d 949, 950–51 (App.Div.1977).

*anty Ass'n.,* 307 S.C. 398, 415 S.E.2d 419, 424 (App.1992) (liquidated where damages are certain or capable of being reduced to a certainty); *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 928 (Tenn.1998) (prejudgment interest where liquidated claim for fixed amount or where amount of damages is ascertainable by computation or by any recognized standard of valuation); *State Farm Fire and Cas. Ins. Co. v. Vandiver,* 970 S.W.2d 731, 746 (Tex.App.1998) (liquidated where there is an ascertainable sum payable); *Estate of Fleming v. Nicholson,* 168 Vt. 495, 724 A.2d 1026, 1031 (1998) (liquidated where damages are readily ascertainable or where they can be calculated from established market prices); *Gill v. Rollins Protective Servs. Co.,* 836 F.2d 194, 198 (4th Cir.1987) (applying Va. law) (no liquidated distinction; prejudgment interest to fully compensate plaintiff for delay in payment of money); *Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wash.2d 654, 15 P.3d 115, 132 (2001) (*en banc* ) (liquidated where evidence furnishes data which makes it possible to compute the amount due with exactness); *Hardman Trucking, Inc. v. Poling Trucking Co., Inc.,* 176 W.Va. 575, 346 S.E.2d 551, 556 (1986) (prejudgment interest may be awarded on ascertainable pecuniary losses that are certain or capable of being rendered certain by reasonable calculation); *Millheiser v. Wallace,* 21 P.3d 752, 755 (Wyo.2001) (liquidated where amount due is readily computable by simple mathematical calculation).

**c. Exxon's contention that the laws applicable to an award of discretionary interest in seven states, namely, Connecticut, Indiana, Mississippi, New Jersey, New Mexico, Tennessee, and Virginia, preclude such an award in those states.**

■ For reasons stated above, the Court respectfully disagrees with Exxon's position and concludes that, as a matter of discretion, prejudgment interest should be awarded in each of the seven states. The following discussion further clarifies this conclusion with respect to the specific state law involved.

**i. Connecticut.**

Applying Connecticut law, the Court concludes that Exxon's detention of the monies which should have been credited to the Class Dealers throughout the Discount For Cash program was wrongful; that the amount was liquidated, and, based on the jury's findings, the Class Dealers diligently presented their claims. *See Brandewiede v.. Emery Worldwide,* 890 F.Supp. 79, 83 (D.Conn.1994). As acknowledged by Exxon, the date of accrual is within the Court's discretion. *Sears Roebuck and Co. v. Bd. of Tax Review of the Town of West Hartford,* 241 Conn. 749, 699 A.2d 81, 89 (1997). Accrual should begin sometime after the money was wrongfully withheld. *Spearhead Constr. Corp. v. Bianco,* 39 Conn. App. 122, 665 A.2d 86, 93 (1995). Taking all the equities into consideration, the Court holds that prejudgment interest shall accrue from the date of the breach. The earliest date of breach would be March 1, 1983, depending on when each Connecticut Class Dealer's contract with Exxon was in effect, and when the Class Dealer commenced to purchase motor fuel under that contract. Thus, if the first contract was in effect on January 1, 1984, but motor fuel was not purchased until January 15, 1984, the date of breach would be January 15, 1984. Of course, each class dealer must establish the beginning date of its contract(s) with Exxon during the Class Period, the dates the contract(s) were in effect during the Class Period, and the total gallons of motor fuel purchased under the contract(s) on a yearly basis. This is

the same calculation necessary to determine compensatory damages. Once compensatory damages are determined for the Class Period, the prejudgment interest rate would apply to that sum on a year-by-year basis through the date of Final Judgment. For instance, if a class dealer in Connecticut entered the first of a series of contracts with Exxon during the Class Period on January 1, 1984, and purchased motor fuel from January 15, 1984, through August 30, 1994 [the conclusion of the DFC program], the prejudgment interest rate would apply on a yearly basis to compensatory damages and then would apply on the aggregate compensatory sum through the date of Final Judgment. The Final Judgment would be entered for the total compensatory damages and prejudgment interest for that Class Dealer.

### ii. Virginia.

Exxon contends that Virginia does not ordinarily allow prejudgment interest when claims are unliquidated and disputed between the parties. *Skretvedt v. Kouri,* 248 Va. 26, 445 S.E.2d 481 (1994). While this may be so, this Court has determined that the claims are liquidated. It is within the Court's discretion under Virginia law to award interest in order to make the dealers whole for the loss sustained by not receiving the money at the time it was initially due. *See Ragsdale v. Ragsdale,* 30 Va.App. 283, 516 S.E.2d 698, 702 (1999).

### iii. Indiana.

Again, since the Court has found the claims to be liquidated and ascertainable, prejudgment interest is permitted under Indiana law. It is within the Court's discretion under Indiana law to fully compensate the dealers for the loss suffered in being deprived of the use of the money

Exxon owed to them. *See Abex Corp. v. Vehling,* 443 N.E.2d 1248, 1259–60 (Ind.Ct. App.1983).

### iv. Mississippi.

In Mississippi, the award of prejudgment interest is normally left to the discretion of the trial court. *Warwick v. Matheney,* 603 So.2d 330, 342 (Miss.1992). Prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith. *Id.* Furthermore, Mississippi acknowledges the judicial authority to award the prevailing party prejudgment interest in breach of contract suits. *Sunburst Bank v. Keith,* 648 So.2d 1147, 1153 (Miss. 1995). As noted above, the claims in this case were liquidated, and it is in the interests of justice to award the Plaintiffs liquidated damages in order to make them whole. It is therefore appropriate to award prejudgment interest to the Mississippi Class Dealer's from the date of filing of the Complaint. *Id.* (acknowledging that, pursuant to Miss.Code Ann. § 75–17–7, prejudgment interest may not be awarded prior to the filing of the complaint).

### v. New Jersey.

The parties agree that under New Jersey law, the Court has broad discretion to grant or deny prejudgment interest on contract claims in accordance with principles of equity and the goal of compensating the plaintiffs' for lost interest. *See Meshinsky v. Nichols Yacht Sales, Inc.,* 110 N.J. 464, 541 A.2d 1063, 1070 (1988); *Rova Farms Resort Inc. v. Investors Ins. Co. of Amer.,* 65 N.J. 474, 323 A.2d 495, 512 (1974); *Musto v. Vidas,* 333 N.J.Super. 52, 754 A.2d 586, 597 (App.Div.2000). The primary consideration in awarding pre-

judgment interest is that "the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled." *Rova Farms*, 323 A.2d at 512. The court's discretion with respect to the award also extends to the time interest accrues and the rate to be applied. *Musto*, 754 A.2d at 598.

Under New Jersey law, the Court concludes that Exxon's detention of the monies due and owing to the Class Dealers throughout the DFC program was wrongful, and that prejudgment interest should be awarded from the later of March 1, 1983, or when the New Jersey Class Dealer in question first purchased motor fuel under a DFC contract with Exxon (*see* discussion of Connecticut law above).

### vi. New Mexico.

New Mexico Statute § 56–8–3 [26] allows prejudgment interest in cases on money due by contract, money received to the use of another and retained without the owner's consent, and money due on the settlement of matured accounts. The obligation to pay prejudgment interest under § 56–8–3 arises by operation of law and constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment (the loss of use and earning pow-

er of the claimant's funds). *See Economy Rentals, Inc. v. Garcia*, 112 N.M. 748, 819 P.2d 1306, 1320 (1991). Prejudgment interest is awarded as a matter of right only when a party has breached a duty to pay a definite sum of money or "the amount due under the contract can be ascertained with reasonable certainty by a mathematical standard fixed in the contract or by established market prices." *Smith v. McKee*, 116 N.M. 34, 859 P.2d 1061, 1063 (1993) (*quoting Kueffer v. Kueffer*, 110 N.M. 10, 791 P.2d 461, 463 (1990)). In cases falling under § 56–8–3, where the amount owed is not fixed or readily ascertainable, the trial court may in its discretion award prejudgment interest of not more than fifteen percent. *Aztec Well Servicing Co. v. Property & Cas. Ins. Guar. Ass'n*, 115 N.M. 475, 853 P.2d 726, 737 (1993).

In this case, the claims of the Class Dealers are liquidated and ascertainable, and prejudgment interest is due and owing as a matter of right. *See Grynberg v. Roberts*, 102 N.M. 560, 698 P.2d 430, 432 (1985) ("where the amount of indebtedness under the contract is ascertainable by the breaching party, the injured party is entitled to interest as a matter of right on those monies at the legal rate"). Furthermore, even if they were not, the equities weigh in favor of granting prejudgment interest to the Class Dealers in order to compensate them for the loss of the use and earning power of their money. Interest is due from the date payments first became due, which in this case is the later of March 1, 1983, or when the New Mexico Class Dealer in question first purchased

---

**26.** Section 56–8–3 provides:

The rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent annually in the following cases:

A. on money due by contract;

B. on money received to the use of another and retained without the owner's consent expressed or implied; and

C. on money due upon the settlement of matured accounts from the day the balance is ascertained.

motor fuel under a DFC contract with Exxon.

### vii. Tennessee.

Under Tennessee law, the award of prejudgment interest is within the sound discretion of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Principles of equity guide this determination, and the court must determine whether the award of prejudgment interest is fair, given the particular facts of the case. *Id.* The purpose of the award of interest is to fully compensate the plaintiff for the loss of the use of the funds to which he or she was legally entitled. *Id.* Courts also consider whether the amount of the obligation is certain, or can be ascertained by a proper accounting, whether the amount is disputed on reasonable grounds, and whether the existence of the obligation itself is disputed on reasonable grounds, but these factors are not dispositive. *Id.*

As noted above, the claims in this case are liquidated and readily ascertainable, and equitable principles weigh in favor of granting prejudgment interest to the Class Dealers to compensate them for the loss of the use of the funds to which they were legally entitled. Pursuant to Tenn.Code Ann. § 47–14–109(c),[27] interest began accruing from the day when the debt became payable, which in this case is the later of March 1, 1983, or when the Tennessee Class Dealer in question first purchased motor fuel under a DFC contract with Exxon.

### 5. Determination of Prejudgment Interest Rates and Accrual Dates.

In order to calculate the amount owed to individual class members in the various states, it is necessary to specify, for each jurisdiction, the applicable rate or rates of interest from the accrual date from which interest may run, whether the interest is simple or compounded within the jurisdiction, and any other unique rules in each jurisdiction relating to the manner of computation of interest.[28] Plaintiffs have previously filed and served a schedule reflecting their view, on a jurisdiction-by-jurisdiction basis, of the appropriate rate of interest and the manner of interest cal-

---

**27.** Tenn.Code Ann. § 47–14–109(c), entitled 'When interest accrues,' provides:

> (a) Interest on negotiable and nonnegotiable instruments shall accrue according to the terms of the instrument; otherwise, interest on the instrument shall accrue as provided in § 47–3–112.
>
> (b) Liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned.
>
> (c) In all other cases, the time from which interest is to be computed shall be the day when the debt is payable, unless another day be fixed in the contract itself.

**28.** For instance, under Conn. Gen.Stat. § 37–3, the maximum interest rate is 10% per annum. The Court has the discretion to set a lower rate. *Sears Roebuck and Co.*, 699 A.2d at 89. In the absence of a specific requirement of a particular rate of interest, Exxon argues that the rate should be the one used for judgment found in 28 U.S.C. § 1961. Those rates are based upon the percentage investment yield on 52–week treasury bills and reflect the value of money during the applicable time period. Interest is to be computed daily until the date of payment and compounded annually. 28 U.S.C. § 1961(b). According to Exxon, using these rates will serve the purpose of "compensating" Connecticut plaintiffs for the lost use of money owed on their claims. In addition, in the absence of a state specific rate, as a national class action, Exxon argues it is appropriate to use this federal rate. The Court shall resolve all such matters on a state-by-state basis once the parties final positions are briefed.

culation, citing to the Court the appropriate authorities for those views [D.E. # 1410]. Within 15 days from the date of this Order, Plaintiffs will supplement their schedule, as they deem appropriate, in a manner consistent with this Order. Thereafter, Exxon, within 30 days from the entry of this Order, shall file and serve a pleading identifying any disagreements with the interest calculation schedule provided by Plaintiffs. Within 10 days of service, Plaintiffs shall file any additional materials they believe are appropriate regarding the rate and method of calculating prejudgment interest in each jurisdiction. Exxon will have 5 days to reply thereto. In the event any discovery is required, the parties shall so specify with particularity in their pleadings.

The Court shall reserve consideration of the interest rate issue until it is determined if differences exist and if discovery is requested. Ultimately, the Court will enter an order making findings as to the applicable interest rate and the rules of applying interest in each jurisdiction involved in this matter. In that regard, Exxon has argued that, in the absence of a specific requirement of a particular rate of interest, the rate should be based upon the percentage investment yield on 52–week treasury bills and reflect the value of money during the applicable time period. It is premature for the Court to rule on this matter at this time. The Court reserves to do so upon the completion of the parties' submissions.

## IV. *THE CLAIMS ADMINISTRATION PROCESS*

The Court must now proceed with a claims administration process that will con-

sist of a notice, a claims period, a process verification of claims, and entry of a Final Judgment, or series of Final Judgments applicable to distinct sub-classes of putative members in accordance with Fed. R.Civ.P. 54(b),[29] and actual distribution.

### A. Opt Outs.

Plaintiffs advise that the vendor retained for purposes of publishing the notice of class certification received notices from 61 persons who may be members of the class who chose not to participate in the outcome. Plaintiffs filed and served a schedule of all dealers who have potentially opted out and have provided to Exxon all documents received. Within 15 days from the date of this Order, Exxon will be required to identify if they have any objections to the opt out list. If differences exist, the Court will thereafter determine the matter.

### B. Claims Handling Process; Coordination with Clerk of Court.

Within 15 days from the date of this Order, the Clerk of the Court, or his designee, shall meet with the parties to develop a process for the filing, handling, and administration of the individual class members' claims. Within 30 days thereafter, the Clerk of the Court shall submit to the Court his proposed procedures for the handling of individual class member claims. The parties shall have 15 days after service in which to file any objections or counter-proposals.

### C. Class Notice and Related Matters.

The parties shall meet and confer within 15 days from the date of this Order con-

---

**29.** For instance, one final judgment could be entered as to all putative class members whose claims are undisputed by Exxon, while disputed claims proceed through the remainder of the claims administration process.

cerning the form and manner of notice to be provided to class members to start the claims process, the time within which class members shall submit their claims, and the time period within which Exxon may file objections to claims [consistent with this Order]. The notice should include a claim form and information concerning what supporting documents or data is to be supplied with the claim. Each claim shall be notarized and should include proof that the person or entity submitting the form was an Exxon dealer during the class period; proof that the person or entity submitting the claim has the capacity to sue;[30] the identity of the station or stations at which the claimant was an Exxon dealer; and the period of time at which such claimant was an Exxon dealer at each station.[31] To the extent there is no agreement, the parties shall submit their proposals within 15 days. The Court reserves to resolve any disagreements between the parties as to these matters.

### D. Exxon's Participation in the Claims Administration Process.

#### 1. Exxon' claim to right of set-off.

■ A set-off is a permissive counterclaim. *See* 3 James Wm. Moore *et al.*, Moore's Federal Practice, § 13.31 (3d. ed.2001). In a class action, it may be filed during the claims administration process solely to defeat or diminish the amount of a class member's recovery, but may not exceed the amount of the claim. *Id.*

Here, Exxon claims potential set-offs relating to unpaid motor fuel charges, unpaid rent, and the like. While a court ordinarily must have an independent basis for subject matter jurisdiction over permissive counterclaims, there is a well-recognized exception to this requirement in the case of a permissive counterclaim that is interposed defensively by way of set-off solely to defeat or reduce a plaintiff's recovery but which does not seek affirmative relief. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1422 (2d ed.1990); *Herrmann v. Atlantic Richfield Co.*, 72 F.R.D. 182, 185 (W.D.Pa.1976) ("[S]et-offs, employed defensively ... fall within the 'defensive set-off' exception to Rule 13(b) and may be asserted in the federal forum despite the absence of an independent jurisdictional basis."); *Kedziora v. Citicorp Nat'l Servs., Inc.*, 901 F.Supp. 1321, 1332 (N.D.Ill.1995) ("A defensive set-off, unlike a permissive counterclaim, 'does not need independent jurisdictional grounds even though the claim is unconnected with the transaction or occurrence on which the main claim is based.' ") (citation omitted); *Curtis v. J.E. Caldwell & Co.*, 86 F.R.D. 454, 457 (E.D.Pa.1980) ("Assertion of a defensive set off is the

---

**30.** There may be disputes between dealers as to who owns the claim for a particular station. In order to resolve the disputes, each class member submitting a claim must show he or she is the real party in interest with regard to the Sales Agreements on which the claim is based. For example, a dealer who sells or assigns his rights under a Sales Agreement to a new dealer may (or may not) have reserved any claims he or she has in this litigation. If so, it ultimately will be necessary to determine which dealer is the owner of the claim under that Sales Agreement.

**31.** For example, two dealers may have been dealers at the same station during a particular year. To avoid duplicative recovery, it will be necessary to determine the precise dates during which each was a dealer at that station. Because Exxon's station records only contain monthly data on fuel volumes, there also may be disputes between such dealers over the particular gallonage to which each is entitled.

one generally recognized exception to this rule that a permissive counterclaim requires an independent basis for jurisdiction."). For this reason, the Court has jurisdiction to hear Exxon's set-off claims. Even if Plaintiff is correct that this long-standing exception may no longer be in effect after the adoption of the supplemental jurisdiction statute, 28 U.S.C. § 1367, the Court would exercise its discretion to hear them in order to assure due process, equity, and fair play. Any argument relative to bar by virtue of applicable statutes of limitation is premature.

■ Although the Plaintiffs contest Exxon's right to file set-offs, virtually every court to consider the issue has concluded that the appropriate time to assert counterclaims against individual class members is during the damage phase of the case. [*See* discussion below]. Where, as here, the calculation of each class member's individual damages has yet to occur, the time to consider any claim of set-off is during the claims administration process. As a practical matter, the claims administration process is the first time at which there is any meaningful opportunity to assert rights of set-off against individual class members.

The leading case on the proper procedure for handling offsets against individual class members is *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485 (S.D.N.Y.1973). There, a group of grocers sued several bakers alleging a conspiracy to fix the price of bread in New York City. The court certified the case as a class action, and the defendants attempted to assert counterclaims against individual members of the class. The court struck the counterclaims and held that an individual member of a class is not a "party" against whom a counterclaim can be as-

serted. *Donson Stores*, 58 F.R.D. at 489. The court held that claims against individual class members could be asserted at the *damages phase* of the case on a class member-by-class member basis. *Id.* at 489–90. *See also Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440, 450 (E.D.Pa.1975) (finding that compulsory liquidated counterclaims could be effectively presented when individual claims for damages are presented); *Weit v. Continental Ill. Nat'l Bank & Trust Co.*, 60 F.R.D. 5, 8 (N.D.Ill.1973) ("We believe the better view is that class members who file claims become 'parties' (for the purpose of Rule 13(a)) and that compulsory counterclaims must then be filed against them or be barred."); *Serpa v. Jolly King Rests., Inc.*, 1974 WL 941 (S.D.Cal.1974) ("The Court concludes that *Donson* sets forth the better view of law and procedures, especially in view of Federal Rule 13's requirement that counterclaims be brought against opposing parties and the very serious question whether unnamed members before liability is established are indeed opposing 'parties.' "); *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 349 (E.D.Pa.1976)("[C]ounterclaims may be brought against unnamed class members only if and when these class members intervene or file claims in this action.").

Plaintiffs suggest that a set-off procedure, coupled with a determination of individual compensatory damages and prejudgment interest, is a "judicial train wreck" which will result in undue delay and prejudice to class dealers. However, Exxon is not permitted a "free ride" on the so-called "judicial train wreck." The prejudgment interest clock still will be ticking, and Exxon will be required to place into escrow the compensatory damages and prejudgment interest calculated as to the disputed class member through the date of

Final Judgment, in a manner described below. Perhaps this fact alone will make set-off claims impracticable. Adjustments will be required only if a set-off is required by law. The review and determination of set offs will occur by a Special Master in accordance with Fed.R.Civ.P. 53. The Court reserves to issue a further order establishing all necessary procedures.

### 2. Exxon's Right to Participate in the Claims Administration Process and to File Objections.

 Plaintiffs argue that Exxon has no right to participate in the claims administration process and to file objections. The Court agrees with Exxon that Plaintiffs' contention defies basic due process. Exxon is a real party in interest. It would have to pay any damages determined to be due. It thereby has the right to appear and participate, including to object and oppose any unfounded or incorrect claim.

The Court therefore concludes that Exxon may participate during the claims administration process, and otherwise file objections. Such objections or requests may pertain to: (i) filing set-offs, as addressed above; (ii) challenging whether the class member was a dealer during the Class Period; (iii) challenging the time period the class member was a dealer during the Class Period; (iv) contesting the amount of gallons purchased by the class member during the Class Period on a yearly basis;

(v) arguing the proper application of any applicable statute of limitations and release as a result of the Court's rulings; (vi) requiring a determination of "Good Faith" amount of claims for subject matter jurisdiction purposes under 28 U.S.C. § 1332, when necessary; and (vii) raising any purported miscalculation of compensatory damages and prejudgment interest for that class dealer. Where there is a dispute between, or among, class dealers as to their participation in the compensatory and prejudgment interest award, Exxon shall have no standing except to contest the total amount of the award at issue.

### E. Claims Procedures.

The parties are directed to meet and confer within 45 days from the date of this Order concerning the Claims Administration Process set forth below and, within 15 days thereafter, file with the Court any objections or recommendations each may have regarding the process. By separate order, the Court shall finalize the process after hearing from the parties. *While the claims administration process may proceed through notice and receipt of claims, no further action through the appointment of the Claims Administrator, or the determination of individual claims, shall proceed until the Eleventh Circuit determines if it will accept an appeal prior to final judgment pursuant to 28 U.S.C. § 1292(b).*[32] At a minimum, the claims administration process shall include the following elements:

---

**32.** As an alternative means of bringing the issues associated with this case to the attention of the Eleventh Circuit as soon as possible, the Court is prepared to enter a Final Judgment for the named Plaintiffs under Fed. R.Civ.P. 54(b). Such a final judgment will not prejudice the claims of the remaining class members and will also allow an immediate full appeal on the merits while the claims administration process for the balance of the class is being established and implemented, and the appellate process is initiated pursuant to 28 U.S.C. § 1292(b). **Accordingly, the parties are directed to file and serve, within 30 days from the date of this Order, the necessary information upon which to enter Final Judgment for the named plaintiffs consistent with this Order. In the event that an evidentiary hearing is required so as to enable a**

1. A special master, who shall serve as the Claims Administrator (hereinafter the "Claims Administrator"), shall be appointed by the Court in accordance with Fed.R.Civ.P. 53. Within the time specified above, the parties shall confer about the appropriate qualifications of the Claims Administrator and his or her powers pursuant to Fed.R.Civ.P. 53(c), and offer their joint recommendations concerning such appointment, powers, or other related subjects related to the claims administration process. The costs of the claims administration process shall be paid by Exxon. These costs include the cost of the class notice, the cost of distribution to the class, and the fees payable to the Claims Administrator, except that any fees to be paid to the Claims Administrator related to addressing and later resolving conflicting claims shall be paid from the compensatory damages and prejudgment interest awarded to the successful claimant. Such claimant may then recover such fees and costs from the unsuccessful claimants.

2. The Claims Administrator shall review each claim filed to determine if the information provided is sufficient and to request additional information as necessary; shall establish, as necessary, the "Good Faith" amount of claims for purposes of the Court's jurisdiction under 28 U.S.C. § 1332; shall determine if there are any conflicts among the various claims and shall identify the claimants involved and the nature of the conflict; shall compute compensatory damages and prejudgment interest in a manner consistent with the orders of this Court; shall initiate, as necessary, a state interpleader action between or among any contesting claimants; and

**final judgment to be entered, the parties shall notify the Court as soon as possible.**

shall open an interest bearing escrow account at a reputable financial institution acceptable to the parties.

3. The Claims Administrator's determination of the total compensatory damages and prejudgment interest, less set-offs, shall be in the form of a report consistent with Fed.R.Civ.P. 53(e).[33] Once Exxon has received the report from the Claims Administrator, it immediately shall transfer to the Claims Administrator escrow account [or individual claimant escrow accounts] a sum certain in United States dollars representing the total compensatory damages and prejudgment interest due to each claimant which shall be held in escrow pending further direction from the Court. Any accumulated interest shall be applied to the additional prejudgment interest owed to the claimant through the date of Final Judgment. Pursuant to further court order, Exxon shall further transfer to the escrow account any sum representing court costs as directed by the Court, and such compensation as fixed by the Court for the Special Master pursuant to Fed.R.Civ.P. 53(a).

4. The Claims Administrator's final report shall identify each verified claimant on a state-by-state basis, together with the total compensatory damages and prejudgment interest owed to the claimant, less any pro rata share of costs and attorney's fees as directed by court order. In addition, the Claims Administrator shall calculate additional prejudgment interest through the date of Final Judgment [which shall be provided to him or her by the Court], less any accumulated interest in the escrow account attributable to the

33. The Claims Administrator may file multiple reports pertaining to sub-classes of putative plaintiffs, such as where Exxon does not contest the Dealers' claims.

claimant. The Court Administrator shall notify Exxon of the additional prejudgment interest due by written statement setting forth the calculations involved and providing any necessary documentation to support the calculation. Prior to the date of the Final Judgment, Exxon shall transfer to the escrow account the additional sum, as directed by the Claims Administrator.

5. In the event of disputes between or among claimants, the Claims Administrator shall calculate the compensatory damages and prejudgment interest at issue and include the amount at issue and the nature of the dispute in the final report. Exxon shall transfer the disputed amount(s) to the Claims Administrator in the manner set forth above. At such point, Exxon shall have no further responsibility or liability to the competing claimants, except to pay into the escrow account any additional prejudgment interest through the date of Final Judgment. Upon receiving competing claims, the Claims Administrator shall direct the parties to private mediation. In the event mediation is unsuccessful, the Claims Administrator shall file interpleader actions following entry of the Final Judgment.

6. The Court shall issue a Final Judgment or series of Final Judgments which sets forth the amounts due to each claimant. Where there are competing claims, the Final Judgment shall specify, upon report from the Claims Administrator, the nature of the dispute and the sum certain in dispute. The Final Judgment shall direct the Claims Administrator to file an interpleader action against the competing claimants in the appropriate state jurisdiction involved in the event mediation is unsuccessful. The Claims Administrator shall be entitled to retain counsel for such

purpose. Counsel's fees shall be paid from the escrow account applicable to the claimants involved. The Claims Administrator shall make payment to the appropriate claimant once the state judgment is final.

7. Any disputes by Exxon as to the matters to which it has standing [*see* § IV(D)(2), *supra* ], shall be addressed by the Claims Administrator in accordance with Fed.R.Civ.P. 53, and resolved by the Court prior to entry of Final Judgment.

### F. Plaintiffs' Attorneys' Fees and Costs.

Within twenty (20) days from the date of this Order, Plaintiffs shall submit a proposal concerning how class attorneys' fees and costs shall be awarded and distributed, and, to the extent that costs incurred are not properly chargeable against Exxon, how additional costs shall be allocated between and among the named and putative plaintiffs. Exxon shall reply, if necessary, within ten (10) days. Plaintiffs shall file a sur-reply in five (5) days. The Court reserves to enter an order on this procedure. Such order shall be distributed to the named plaintiffs and ultimately to the putative class members who file claims.

## V. CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

It is the opinion of this Court that an immediate appeal to the Eleventh Circuit Court of Appeals of this Order and accompanying Judgment on Special Verdict by either or both parties is appropriate and should be permitted. Pursuant to 28 U.S.C. § 1292(b), the district court may certify that an order is appropriate for interlocutory appeal if the court believes that "such order involves a controlling question of law as to which there is a

substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All of the criteria are present here.

The Order in this case is the culmination of almost ten years of litigation. The question of whether an aggregate compensatory and prejudgment interest award by Final Judgment may be entered at this juncture preceding the claims administration process in a class action, and thereby creating a *cy pres* fund from which Exxon would be divested of all rights, is a controlling question of law as to which there is substantial ground for difference of opinion. Closely related, the second question of whether the 1990 amendments to 28 U.S.C. § 1367 extended supplemental jurisdiction to the claims of an entire class once the claim of at least one class member satisfies the requisite amount in controversy, thereby overruling *Zahn*, has not only resulted in a Circuit split, but an equal division among participating Justices of the United States Supreme Court. It poses a question over which this Circuit has not yet opined.

An immediate appeal from this Order, together with the judgment on Special Verdict entered in accordance herewith, will materially advance the ultimate termination of the litigation by giving direction to the forthcoming claims administration process, thereby avoiding significant lost time and unnecessary expense if the legal conclusions set forth in this Order are ultimately reversed.

Even if the parties proceed, as this Court has directed, such that a Final Judgment is entered with respect to the named plaintiffs pursuant to Fed.R.Civ.P. 54(b), this Court still believes certification of this order for interlocutory review is warranted for the reasons stated, as it affects the remaining thousands of putative class members.

Finally, while appeal of this Order is interlocutory, this Court urges the Eleventh Circuit Court of Appeal to consider all legal issues directed to the Judgment on Special Verdict, which this Court has directed the Clerk of Court to enter, as part of its pendent appellate jurisdiction. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1365 ("Although the compel order is clearly an interlocutory order over which we would not normally have jurisdiction, we may exercise pendent appellate jurisdiction 'when a non-appealable decision is inextricable intertwined with an appealable decision or when review of the former [is] necessary to ensure meaningful review of the later.'") (citation omitted). This Court and the parties will greatly benefit from the Eleventh Circuit's review and early determination of the myriad of legal issues associated with this case before untold additional attorneys' fees and costs are incurred in reaching a Final Judgment for both the named and putative class members. For instance, it would not make sense to complete a claims administration process to thousands of Class Dealers if the Eleventh Circuit should determine that those dealers are barred from collecting damages because of their releases with Exxon.

Therefore, this Court certifies that an immediate appeal is in the best interest of materially advancing the ultimate termination of this litigation. The parties are reminded that in order to invoke the discretionary review of the Eleventh Circuit they must apply for review within ten days from the date of this order. 28 U.S.C. § 1292(b).

**WHEREFORE,** it is **ORDERED:**

1. Plaintiff's Motion for Entry of Order on Procedure for Determination and Entry of Final Judgment is granted in part and denied in part [D.E. # 1409], as provided in this order.

2. Plaintiffs' claim to entry of an aggregate judgment in favor of the class as a whole is **DENIED.**

3. The Clerk of Court is directed to enter judgment in the manner set forth in Attachment A to this Order.

4. Plaintiffs' pleadings are amended so that diesel fuel purchases are included in the calculation of class members' compensatory damages.

5. The Ohio statute of limitations applies and gallons purchased by Dealers residing in Ohio prior to May, 1987, are excluded from the compensatory damage calculation.

6. The Florida statute of limitations, Fla. Stat. § 95.11(2)(b), does not bar Plaintiffs' claims in that, under the "delayed discovery doctrine," the cause of action did not accrue until November of 1990.

7. Plaintiffs are entitled to prejudgment interest, for the reasons set forth in this Order. Prejudgment interest rates and accrual dates shall be determined as set forth in this Order.

8. With regard to Claims Administration, the parties and Clerk of Court shall comply with the Court's findings, conclusions and orders on "opt outs," claims handling processes, and class notice, as set forth in this Order.

9. Exxon is entitled to participate in the Claims Administration Process, and file set-offs and objections, as warranted, as set forth in this Order.

10. The parties shall file objections to the Claims Administration Process set forth in this Order as directed. The Court reserves to finalize the process after hearing from the parties and the Clerk of Court.

11. The Court reserves to issue a Final Judgment or series of Final Judgments, as set forth in this Order, as well as to order attorneys' fees and costs.

12. Certification of interlocutory appeal to the Eleventh Circuit Court of Appeals is hereby provided pursuant to 28 U.S.C. § 1292(b), for the reasons stated in this Order. In any event, the parties are directed to proceed forward with respect to a Final Judgment for the named plaintiffs pursuant to Fed.R.Civ.P. 54(b), as directed by this order.

EXHIBIT "A"

### JUDGMENT ON SPECIAL VERDICT

This action came on for trial before the Court and a jury, Honorable Alan S. Gold, United States District Judge, presiding, and the issues in the Special Verdict having been duly tried and the jury having duly rendered its verdict,

It is Ordered and Adjudged, pursuant to Fed.R.Civ.P. 58, that judgment is hereby entered in favor of Plaintiffs, and against the Defendant, upon the Special Verdict [D.E. # 1395] rendered by the Jury on February 20, 2001. The Special Verdict made certain factual findings and established a damage factor in favor of the Class Plaintiffs in this case. Those findings and the damage factor shall govern and apply in all further proceedings involving the Class Plaintiffs and Exxon Corporation in the Claims Administration Process.