2004 ME 29

**Nathan PEASE Jr. et al.**

v.

**JASPER WYMAN & SON et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 13, 2004.

Decided: March 4, 2004.

Robert J. Keach (orally), Jeffrey A Thaler, Michael A. Fagone, Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for Allen's Blueberry Freezer, Inc.

William J. Kayatta Jr., Catherine R. Connors, Clifford H. Ruprecht, Pierce Atwood, Portland, for Cherryfield Foods, Inc.

James T. Kilbreth, Valerie A. Wright, Verrill & Dana, LLP, Portland, for Jasper Wyman & Son.

William D. Robitzek (orally), Paul F. Macri, Berman & Simmons, P.A., Lewiston; Daniel A. Small, Charles E. Tompkins, Cohen, Milstein, Hausfeld & Toll, PLLP, Washington, DC, for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Allen's Blueberry Freezer, Inc.,[1] appeals from an order of the Superior Court (Knox County, *Jabar, J.*) denying its motion to dissolve the postjudgment attachment that Nathan Pease Jr. and the other plaintiffs placed on its property after a jury returned a verdict for the plaintiffs in November of 2003. Allen's contends that the Superior Court should have dissolved the attachment because the judgment did not represent a definite amount owed to the plaintiffs and did not comply with the requirements in M.R. Civ. P. 23(c)(3). We are unpersuaded by Allen's contentions, but because we conclude that the November docket entry was not an "attested copy of the court order awarding judgment" within the meaning of 14 M.R.S.A. § 4151 (2003), we vacate the order of the Superior Court.

## I. FACTUAL AND PROCEDURAL HISTORY

[¶ 2] Pease and other Maine wild blueberry growers brought a class action lawsuit against the four largest processors of wild blueberries in Maine, alleging that the processors conspired to fix the prices they paid to the growers in violation of Maine's antitrust statute, 10 M.R.S.A. §§ 1101–1109 (1997 & Supp.2003). At trial, the growers' expert witness, John Solow, testified that the damages to the industry resulting from the defendants' conduct totaled $18.68 million. Solow acknowledged that the figure included damages for individuals who were not in the class, including those who opted out, growers who did not receive individual notice of the action, and certain leaseholders.

[¶ 3] During the trial, the growers offered to present a different measure of damages to the jury. They offered to ask the jury to set the amount of damages in terms of the additional cents per pound

---

1. There were originally four defendants in this case. Merrill Blueberry Farms settled prior to trial; Jasper Wyman & Son and Cherryfield Foods, Inc., reached a settlement agreement with the plaintiffs prior to oral argument before this Court and are seeking approval of that agreement with the Superior Court.

that the growers should have received, and in the alternative, they offered to present evidence that would have subtracted, from the industrywide damage number, the damages of those who were not properly in the class. The processors refused both offers, hoping to rely on cross-examination to expose the flaws in the damages figure. Allen's contends that the Superior Court "nevertheless decided to foreclose cross examination and allowed submission of the gross, overstated damages to be presented to the jury," reasoning that the actual damages that the processors might owe would be determined in an administrative claim process.

[¶ 4] The jury returned a verdict for the growers in the amount of $18.68 million. The growers obtained an attested copy of the docket sheet reflecting the entry of the judgment in November of 2003, and recorded it in the registries of deeds in Hancock, Knox, Washington, and Waldo counties and with the Secretary of State. The growers also filed a motion for post-judgment attachment by trustee process and a motion to amend the judgment to include the statutorily trebled amount of damages and costs, including attorney fees. The processors filed a motion to dissolve the attachment.

[¶ 5] At the January 2004 hearing on the postjudgment motions, the Superior Court denied the growers' motion for attachment by trustee process, granted the growers' motion to amend the judgment, and signed an order amending the judgment immediately. The court took the processors' motion to dissolve the attachment under ad-

visement, and later denied the processors' motion. Allen's subsequently appealed. The growers cross-appealed the denial of their motion for attachment by trustee process.

## II. NOVEMBER DOCKET ENTRY

[¶ 6] Allen's contends that in order to be enforceable, the judgment must direct the payment of a definite and certain amount of money. Asserting that the November judgment is based on the damages to the industry and will later be reduced, Allen's contends that it is not a judgment that can provide the basis for attachment pursuant to 14 M.R.S.A. § 4151.[2] We disagree.

[¶ 7] The purpose of section 4151 is to provide the successful plaintiff with a means of ensuring that some of the defendant's assets are available to satisfy the judgment. Section 4151 is intended to fill the gap between the time that a judgment is entered and the time when a judgment has become final and can be executed, and provides for postjudgment attachment even though the judgment is not yet capable of execution.

[¶ 8] If a plaintiff seeks prejudgment attachment, the plaintiff has the burden of showing that

it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other

**2.** Title 14 M.R.S.A. § 4151 provides:

Following the entry of judgment in a civil action and prior to the issuance of a writ of execution upon the judgment, any interest in real or personal property, which is not exempt from attachment and execution, may be attached by the plaintiff by the filing in the registry of deeds for the county in

which the property is located, with respect to real property, or in the office of the Secretary of State, with respect to property of a type a security interest in which may be perfected by a filing in such office under Title 11, Article 9–A, of an attested copy of the court order awarding judgment.

writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R. Civ. P. 4A(c). In order to obtain a prejudgment attachment, the plaintiff must produce affidavits setting forth sufficient facts to satisfy the above requirements and must acquire a court order approving the attachment. M.R. Civ. P. 4A(c), (i); 14 M.R.S.A. § 4151.

[¶ 9] In a postjudgment attachment, for which an order approving the attachment is not required, the judgment is, in effect, being substituted for the court's finding that the plaintiff satisfied the standard provided in Rule 4A(c). If the judgment does not specify the amount of the damages, then it is not an appropriate substitute because it could not satisfy the Rule 4A(c) standard.

 [¶ 10] In this case, the jury determined that the amount of damages suffered by the growers equaled $18.68 million. This judgment provides a basis for attachment pursuant to Rule 4A(c) and section 4151 because it is a judgment for the growers in a specific amount. *See Lisbon Sch. Comm. v. Lisbon Educ. Ass'n*, 438 A.2d 239, 245 (Me.1981). Admittedly, the November judgment is subject to amendment, and was amended in January to comply with M.R. Civ. P. 23(c)(3). Nonetheless, if neither party moved to amend the judgment or otherwise contested its validity, the November judgment would eventually become final and capable of execution. *See* 14 M.R.S.A. § 4651 (2003). The fact that the November judgment is still subject to amendment means that it cannot be executed, *id.*, but a judgment, so long as it satisfies the standard set forth in Rule 4A, can provide the basis for attachment even though it is not yet

capable of execution. *See* M.R. Civ. P. 4A; 14 M.R.S.A. § 4151.

 [¶ 11] Nonetheless, section 4151 requires that "an attested copy of the court order awarding judgment" must be filed in a registry of deeds or in the Secretary of State's office before property may be attached. 14 M.R.S.A. § 4151. In *Englebrecht v. Dev. Corp. for Evergreen Valley*, 361 A.2d 908 (Me.1976), we stated: "Since the attachment procedure is in derogation of the common law and may work a hardship upon debtors, the rule of strict construction of statutes under which the attachment is sued out applies and the attaching plaintiff must bring himself within the strict provisions of the statute-implemental rules." *Id.* at 910–11. Although we have applied this principle more vigorously in prejudgment attachment cases than in postjudgment attachment cases, *see Bowman v. Dussault*, 425 A.2d 1325, 1328 (Me.1981); *Fitzgerald v. Gamester*, 658 A.2d 1065, 1070 (Me.1995), the statute providing for attachment must be complied with in either case.

 [¶ 12] In this case, the growers brought an attested copy of the docket sheet, reflecting the entry of judgment for the growers in the amount of $18.68 million, to various registries of deeds and the Secretary of State's office. The docket sheet, however, was not signed by a judge and was not an order of the court. It simply reflects the entry of a judgment.

 [¶ 13] Because, pursuant to section 4151, property may be attached postjudgment only when "an attested copy of the court order awarding judgment" is filed, an attested copy of a docket sheet will not suffice.[3] Accordingly, the Superi-

---

3. In response to the dissenting opinion, there is a difference between when a judgment is

entered and becomes effective, which Rules 58 and 71 speak to, and the definition of a

or Court erred in not dissolving the November attachment.[4] Nevertheless, after the Superior Court signed an order amending the judgment in January 2004, the growers took the amended judgment, which has all the qualities of a court order awarding judgment, and filed the signed court order in the same registries of deeds in which they filed the earlier November docket entry, and also filed it in the Secretary of State's office. Allen's has not challenged the amended judgment, nor has it challenged the January attachment. Because Allen's has not challenged the January attachment, its property, even after the November attachment is dissolved, will remain attached in order to satisfy the January judgment of $56.04 million.

The entry is:

Order vacated.

ALEXANDER, J., dissents and files opinion.

ALEXANDER, J., dissenting.

[¶ 14] I respectfully dissent from the reasoning of the Court's opinion, but not the ultimate result. The attachment addressed by the Court in this case resulted not from a court order, but from the recording of attested copies of the docket entries indicating the jury's $18.68 million damages determination. We may be changing past practice if we hold that an attested copy of docket entries, where the docket entries include a notation of a judgment, cannot be "an attested copy of the court order awarding judgment" pursuant to 14 M.R.S.A. § 4151.

[¶ 15] M.R. Civ. P. 58 contemplates that judgment may be entered by the clerk, at the direction of the court, entering a judgment or copying a judgment order into the docket. The commentary to Rule 58 in 2 Field, McKusick & Wroth, *Maine Civil Practice* (2d ed. 1970) notes at section 58.1:

> Indeed, the judgment itself may be rendered orally by the judge. The clerk's notation of the judgment on the docket, even though only a ministerial act, is the step that makes the judgment effective. It must be the judgment that is noted on the docket; notation of merely a verdict is not entry of judgment.

*Id.* at 49.

[¶ 16] Thus, for some judgments, particularly those rendered in the more distant past, no order signed by a judge may have existed. In fact, our judgment forms were designed to be signed by the clerk, not the judge. *Id.* at 397. The commentary at

---

court order within the meaning of section 4151 for purposes of securing an attachment.

Pursuant to Rule 58, the clerk's notation of the judgment in the docket makes the judgment effective; it does not follow that the clerk's notation of the judgment in the docket is a court order awarding judgment.

Rule 77(c) merely addresses actions that a clerk may take that do not require a court order, and Rule 77(e) speaks only to the effect of a facsimile signature of the clerk.

Neither of the rules transforms the *entry* of a court order awarding judgment into a court order awarding judgment. What is important is what section 4151 requires to attach property, and the language of section 4151 requires an order signed by the judge, as was the order in January.

4. Because we conclude that the November attachment should have been dissolved because a docket entry is not "an attested copy of the court order awarding judgment," 14 M.R.S.A. § 4151, we do not reach Allen's contention that the November docket entry did not comply with M.R. Civ. P. 23(c)(3), and therefore, was not enforceable and could not provide a basis for attachment pursuant to section 4151. In addition, we do not reach the growers' contention that the Superior Court erred by denying their motion for post-judgment attachment by trustee process. The growers did not pursue a similar motion with respect to the January judgment.

section 58.7 further notes that Fed. R.Civ.P. 58 was extensively revised in 1963 to include, among other provisions, a requirement that "every judgment shall be set forth on a separate document and shall be effective only when so set forth." 2 *Field, McKusick & Wroth* at 52. The commentary notes that Maine did not follow that change in the federal rule and has continued to allow judgments to be reflected by entry in the docket, without a document separate from the docket entries. *Id.*

[¶ 17] M.R. Civ. P. 77 then addresses clerk's orders and the significance of clerks' signatures and facsimile signatures. M.R. Civ. P. 77(c) notes that, among other things, clerks may issue "final process to enforce and execute judgments ... and for other proceedings that do not require allowance or order of the court are grantable of course by the clerk." The discussion of a 1969 amendment to M.R. Civ. P. 77(e) allowing facsimile signatures establishes that clerk signatures or facsimile signatures of clerks may be used to reflect the entry of a judgment including "the entry of judgment upon the verdict of the jury or upon the direction of the court." M.R. Civ. P. 77(e) advisory committee's note to 1969 amend. 2 Field, McKusick & Wroth at 254–55. The advisory committee note closes with the observation that: "Although the Committee is confident that the Law Court would rule that a judgment entered on the facsimile signature of the clerk was not invalid for that reason, it proposes the amendment of the rule in order that the question need not even be litigated." *Id.* at 255. The signature or facsimile signature requirements necessarily related to notices or orders of judgment, not the docket entries, as docket entries do not require a clerk's signature or facsimile.

[¶ 18] This history of Rules 58 and 77 indicates that such clerk signed docket entries and judgments have had the same effect as judgments entered on separate orders signed by a judge. They would appear to be contemplated within the phrase "attested copy of the court order awarding judgment" that now appears in 14 M.R.S.A. § 4151.

[¶ 19] The Court is now holding that "an attested copy of the court order awarding judgment" means only a separate court order, signed by a judge and does not mean an attested copy of a docket entry reflecting a judgment entered at the direction of a judge but signed by a clerk. In effect, the Court is adopting the separate order requirement that we declined to adopt when the federal rule changed in 1963, and the Court is requiring that a judge, not a clerk, sign the separate order of judgment.

[¶ 20] Although the recording of the attested copy of the docket entry was a proper form to generate an attachment pursuant to 14 M.R.S.A. § 4151, I agree we should vacate. All parties agree that the entry in the docket of the $18.68 million determination was not a final "judgment adjudicating all the claims and the rights and liabilities of all the parties." M.R. Civ. P. 54(b)(1). Accordingly, it was "subject to revision at any time." *Id.*

[¶ 21] Before defendants filed this appeal, the November 19 damages entry had already been amended on plaintiff's motion to increase the damages amount to $56.04 million. Both the $56.04 million and the $18.68 million are aggregate, industrywide damages amounts. They must be subject to a claims adjudication process before the necessarily lesser actual damages amounts are determined for the individual plaintiffs, or the plaintiffs' class as a whole. *See Allapattah Servs., Inc. v. Exxon Corp.,* 157 F.Supp.2d 1291, 1300–1306 (S.D.Fla.2001),

*aff'd*, 333 F.3d 1248, 1256–58 (11th Cir. 2003).

[¶ 22] Because there is no final judgment and because the actual damages to each individual plaintiff and the plaintiffs' class have yet to be adjudicated, there is no way yet for plaintiffs to record a document to create an attachment "as security to satisfy the judgment for damages and costs which the plaintiff may recover." 14 M.R.S.A. § 4151. Any attachment created by recording a document that is not a final judgment, and reflects a damages amount far higher than the amount that will ultimately be recovered, is improper and should be declared void.

[¶ 23] The Court asserts that the January 2, 2004, amended order increasing the damages amount to $56.04 million is not subject to this appeal. However, the defendant's appeal was filed on January 7, 2004, five days after the amended order. M.R.App. P. 2(b)(4) specifies that "[a]n appeal from a judgment, whenever taken, preserves for review any claim of error in the record including any claim of error in any [order on a motion to amend (M.R.Civ. P. 52(b) or 59)] even if entered on a motion filed after the notice of appeal." The speed with which the appeal has proceeded may have resulted in less focus on some issues, but there is no question after oral argument that the defendants, or at least Allen's, do challenge the damages amount set in the January 2 amended order. That challenge is properly before us. *See* DONALD G. ALEXANDER, MAINE APPELLATE PRACTICE § 2.9 (1st ed. 2003).

[¶ 24] Accordingly, I would remand to the Superior Court to declare any recording of a number, purportedly pursuant to 14 M.R.S.A. § 4151, to create an attachment, null and void as not reflecting a "judgment for damages and costs which the plaintiff may recover." This respects the law, stated in the Court's opinion, that attachment statutes should be strictly construed, with the attaching plaintiffs bringing themselves within the "'strict provisions of the statute-implemental rules.'" Court's opinion, ¶ 11 (quoting *Englebrecht v. Dev. Corp. for Evergreen Valley*, 361 A.2d 908, 910–11 (Me.1976)). The strict construction mandate is not served by permitting attachment under § 4151 for a sum far higher than "the plaintiff may recover." 14 M.R.S.A. § 4151.

[¶ 25] Where liability has been determined, but a final damages amount that plaintiffs may recover has not been determined, plaintiffs should be required to seek to protect their prospective judgment by petitioning the Superior Court for pre-judgment attachment or trustee process. They should not be permitted to file a jury fact-finding of an amount that they acknowledge is far higher than they will recover, and use this amount as a basis for attachment.